UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SPIRE GLOBAL SUBSIDIARY, INC.,<br><br>        Plaintiff,<br><br> -v-<br><br>NORTHSTAR EARTH & SPACE, INC.,<br><br>        Defendant. | CIVIL ACTION NO. 24 Civ. 8434 (JHR) (SLC)<br><br>**OPINION AND ORDER** |

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Defendant NorthStar Earth & Space, Inc. ("Northstar") moves to compel arbitration of the disputes Plaintiff Spire Global Subsidiary, Inc. ("Spire") raises in its motion for summary judgment in lieu of complaint, and to stay this case during the pendency of arbitration. (ECF No. 18 (the "Motion")). Spire resists. (ECF No. 27). The Honorable Jennifer H. Rearden referred this non-dispositive Motion. (ECF No. 26). The Motion is GRANTED, and this case is STAYED during the pendency of the arbitration.

## II. BACKGROUND

### A. Factual Background[1]

NorthStar is "a business corporation incorporated under the federal laws of Canada[,]" and Spire is "a company incorporated in the State of Delaware[.]" (ECF No. 19-1 at 3). Spire

---

[1] "'Courts deciding motions to compel [arbitration] apply a standard similar to the one applicable to a motion for summary judgment,' meaning that they can consider relevant evidence outside the complaint." Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP, No. 22 Civ. 5212 (JPC) (JEW), 2023 WL 2138693, at *1 n.1 (S.D.N.Y. Feb. 21, 2023) (quoting Starke v. SquareTrade, Inc., 913 F.3d 279, 281 n.1 (2d Cir. 2019)). "On a motion for summary judgment, the court considers all relevant, admissible evidence submitted by the parties and contained in the pleadings, depositions, answers to interrogatories,

"operates a constellation of nanosatellites and a network of earth stations to collect shipping, aircraft, and weather data from around the Earth." (Id.) It "hosts bespoke payloads on its satellites as part of its 'Space Services' product." (Id.) NorthStar "requires images from space to sell its services to its customers, for which [it] has patented specifications." (ECF No. 19-4 at 2).

On March 1, 2022, the parties entered into a "Constellation Services Framework Agreement" (the "Framework Agreement"), under which NorthStar "may order satellites" from Spire "to obtain a certain number of images per day" depicting "space debris [and] objects in orbit in low light[] conditions." (ECF No. 19-1 at 2–3). Under the Framework Agreement, Spire was to "manufacture, launch, and operate three (3) satellites . . . to deliver a certain number of images per day to [NorthStar,]" and NorthStar reserved the right "to have Spire [] manufacture, launch, and operate a further thirty (30) satellites[.]" (Id. at 2). The satellites were supposed to meet specifications "for NorthStar's patented Concept of Operations ('CONOPS') that it uses to locate, identify and track potential threats from space." (ECF No. 19-4 at 2). The Framework Agreement requires Spire to remedy satellite non-functionality within eleven months. (ECF No. 19-1 at 19).

The Framework Agreement contains an arbitration provision at Section 49.1:

Any dispute or claim arising out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims) shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said

---

admissions and affidavits, and draws all reasonable inferences in favor of the non-moving party." Id. Accordingly, the following factual background is drawn from the allegations in Spire's motion for summary judgment in lieu of complaint, the documents it incorporates by reference, and the declarations and exhibits submitted by the parties. See id. at *1 & n.1 (considering same with respect to a motion to compel arbitration under the FAA); Citigroup Inc. v. Sayeg, No. 21 Civ. 10413 (JPC), 2022 WL 179203, at *1 & n.1 (S.D.N.Y. Jan. 20, 2022) (same with respect to a petition to compel arbitration under the FAA). (See also ECF Nos. 1; 13; 19; 27; 35).

>Rules. Any dispute or claim shall be resolved by a sole arbitrator unless the Parties fail to appoint a sole arbitrator within the delays provided in the Rules of Arbitration of the International Chamber of Commerce, in which case the dispute or claim shall be resolved by three arbitrators appointed in accordance with such rules.

(ECF No. 19-1 at 37 (the "Arbitration Provision")).

On October 20, 2023, the parties executed a promissory note (the "Note"), under which NorthStar promised to pay $4,500,000.00 plus interest to Spire "for value received . . . pursuant to the terms of the Spire Agreement" which the Note later defines as "that certain Constellation Services Framework Agreement and related Statement of Work No. 11, dated March 1, 2022, by and between [Spire] and [NorthStar] (the "Spire Agreement")[.]" (ECF No. 19-3 at 2, 5). The Note was "issued for business purposes and evidences a deposit for services to be rendered by [Spire] under the Spire Agreement." (Id. at 2).

As NorthStar's counsel describes it, under the Note, "Spire agreed to give vendor financing to NorthStar for services to be provided by Spire under the preexisting [F]ramework [A]greement." (ECF No. 36 at 3). That vendor financing relates to Rocket Lab, a launch provider NorthStar identified that assisted Spire in launching four satellites contemplated by the Framework Agreement (the "Block 1 Satellites"). (ECF Nos. 19-4 at 2; 19-5 at 16–17; 27-2 at 6–8; 36 at 9). Before the parties agreed to use Rocket Lab as a vendor, Spire identified two other launch providers—one that ceased operating and another that went bankrupt—that did not provide the necessary services. (Id.) Spire initially refused to use Rocket Lab because its services were too expensive, so NorthStar agreed to cover the additional costs above what Spire had agreed to pay Spire's preferred but now-bankrupt launch provider. (Id.) NorthStar's agreement to pay these additional costs became the Note, which represents the $4,500,000.00 difference

in price (plus interest) between Rocket Lab and the now-bankrupt launch provider. (See generally ECF Nos. 19-3; 27-2; see also ECF No. 36 at 9–10).

The Note contains a "Governing Law" provision:

> It is intended that this Note will be construed and enforced in accordance with the substantive laws of the State of New York without reference to principles of conflicts of law. [NorthStar] irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind or description, whether in law or equity, whether in contract or in tort or otherwise, against [Spire], in any forum other than the courts of the State of New York sitting in New York County, and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, and each of the parties hereto irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees that all claims in respect of any such action, litigation or proceeding may be heard and determined in such New York State court or, to the fullest extent permitted by applicable law, in such federal court. Each of the patties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. [NorthStar] irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Note in any court referred to in this paragraph and irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(ECF No. 19-3 at 8 (the "Governing Law Provision")).

On January 31, 2024, Spire launched the Block 1 Satellites. (ECF No. 19-4 at 2). Of the four Block 1 Satellites, one was lost in space while the other three functioned "but at levels [that] cannot produce transmittable images that meet" the requirements of the Framework Agreement. Spire informed NorthStar that it could not remedy the satellite's non-functionality within the eleven-month period required by the Framework Agreement. (ECF Nos. 19-1 at 19; ECF No. 19-4 at 6).

B. **Procedural History**

1. **The Canadian Injunction**

Because NorthStar alleged that Spire did not deliver the images contemplated in the parties' Framework Agreement, and Spire indicated that it could not remedy the problem within eleven months, NorthStar sought and received an interlocutory injunction from Canada's Superior Court of Justice—Ontario on September 10, 2024, which requires (i) certain payments between the parties, (ii) Spire to continue operating certain satellites during the injunction period, and (iii) NorthStar to commence an arbitration. (ECF No. 19-4 at 2, 17).

2. **The ICC Arbitration**

On September 20, 2024, pursuant to the Arbitration Provision, NorthStar initiated an international arbitration proceeding in the International Court of Arbitration of the International Chamber of Commerce ("ICC") to remedy Spire's alleged breach of the Framework Agreement, specifically Sections 12.1 and 12.2, which set forth Spire's obligations if the functionality of a satellite or block of satellites fail. (ECF No. 19-5 at 2, 4, 10–11). NorthStar sought $14,777,506.25, and, among other things: (i) an order requiring Spire to continue operating satellites until it remedies the breach "and/or until any damages sought and awarded to NorthStar have been paid"; (ii) an order requiring Spire to disgorge any fees NorthStar paid under the Framework Agreement, and to pay "any Set-up Fees or [] fees paid to Spire under the [Framework] Agreement or under the ISA or at all"; (iii) an order declaring that NorthStar "need not pay Spire any further sums relating to services to be performed by Spire pursuant to the [Framework] Agreement, whether under the [Framework] Agreement, Note, or otherwise"; (iv) monetary damages for breach of the Framework Agreement; (v) "a declaration that, as a result of Spire's

5

material breaches of the [Framework] Agreement . . . any obligation of NorthStar to make payments to Spire under the Note is null and void"; and, (vi) an order "requiring Spire to pay interest at an appropriate commercial rate on all damages or fees awarded[.]" (Id. at 30–31, 34). NorthStar also requested an expedited arbitration. (Id. at 32).

Spire then filed an opposition in which it disputed NorthStar's factual allegations, opposed NorthStar's requested relief, asserted a counterclaim against NorthStar seeking declaratory and monetary relief, and argued that, pursuant to the Note rather than the Arbitration Provision, the New York courts, not the ICC, were the proper tribunal. (See generally ECF No. 19-10).

NorthStar subsequently filed an "Application for Expeditious Determination[.]" (ECF No. 19-13). As of January 30, 2025, the ICC arbitration is ongoing. (See ECF No. 35-1). At oral argument, NorthStar's counsel represented that three arbitrators have been impaneled and the "first status conference in the ICC arbitration [was] scheduled for" February 21, 2025. (ECF No. 36 at 5).

### 3. This Proceeding

On October 22, 2024, Spire filed a motion for summary judgment in lieu of complaint in the New York Supreme Court, New York County, seeking an order requiring NorthStar to pay to Spire "an amount equal to all outstanding principal and accrued interest due under the" Note, "but in no event less than the outstanding principal balance of $4,500,000.00, together with all applicable interest (including default interest), and all fees and expenses (including attorneys' fees) incurred by [Spire] in connection with enforcing its rights under the" Note, "together with the costs and disbursements of this action[.]" (ECF No. 1-1 at 4). NorthStar removed the action

to this Court pursuant to diversity jurisdiction, 28 U.S.C. § 1332. (ECF No. 1 at 1, 6). Spire then filed its Rule 56.1 Statement. (ECF No. 13).

On December 17, 2024, after the Court adjourned NorthStar's deadline to respond to Spire's motion for summary judgment in lieu of complaint (ECF No. 17), NorthStar filed the Motion. (ECF No. 18). Spire filed an opposition to the Motion. (ECF No. 27). NorthStar then filed a reply. (ECF No. 34). The Honorable Jennifer H. Rearden referred the Motion (ECF No. 26), and the Court heard oral argument on February 12, 2025. (See minute entry dated Feb. 12, 2025).

### III. STANDARD OF REVIEW

#### A. The FAA

Under the Federal Arbitration Act ("FAA"), a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. "The FAA embodies a national policy favoring arbitration founded upon a desire to preserve the parties' ability to agree to arbitrate, rather than litigate, their disputes." Gordon v. Wilson Elser Moskowitz Edelman & Dicker LLP, No. 22 Civ. 5212 (JPC) (JEW), 2023 WL 2138693, at *2 (S.D.N.Y. Feb. 21, 2023) (quoting Doctor's Assocs. v. Alemayehu, 934 F.3d 245, 250 (2d Cir. 2019)).[2] Because the FAA "intended to place arbitration agreements upon the same footing as other contracts," arbitration remains "a creature of contract." Id. (quoting Alemayehu, 934 F.3d at 250).

To determine whether to compel arbitration, courts perform a two-step inquiry that looks at contract principles "governed by state rather than federal law." Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003) (per curiam). At step one, the court

---

[2] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

7

considers whether "the parties enter[ed] into a contractually valid arbitration agreement[.]" Id. At step two, courts consider "whether a court or an arbitrator should decide if the dispute falls within the scope of the agreement to arbitrate." Citigroup Inc. v. Sayeg, No. 21 Civ. 10413 (JPC), 2022 WL 179203, at *5 (S.D.N.Y. Jan. 20, 2022).

After conducting the two-step inquiry, courts then consider "whether one party to the agreement has failed, neglected or refused to arbitrate." Beijing Shougang Mining Inv. Co. v. Mongolia, 11 F.4th 144, 162 (2d Cir. 2021), cert. denied, 142 S. Ct. 2889 (2022). "A party has refused to arbitrate if it commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so." Id. "Once a party petitions to compel arbitration, '[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" Id. (quoting 9 U.S.C. § 4).

### B. The New York Convention

This case involves a commercial agreement (the Framework Agreement), an international arbitration, and a foreign party, NorthStar. Chapter 2 of the FAA implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 9 U.S.C. §§ 201–208 ("New York Convention").[3] See Altacorp Cap. Inc. v. Fin. Indus. Regul. Indus., Inc., No. 20 Civ. 5221 (PAE), 2020 WL 7711164, at *1 (S.D.N.Y. Dec. 29, 2020). The New York Convention "applies to an arbitration agreement, like the [Framework Agreement] at issue here, that is commercial

---

[3] As discussed below, Spire contends that the Note is an agreement separate from the Arbitration Provision of the Framework Agreement and does not discuss the New York Convention in its opposition to the Motion. (See ECF No. 27).

8

and that is not 'entirely between citizens of the United States.'" Id. (quoting Motorolla Credit Corp. v. Uzan, 388 F.3d 39, 49 (2d Cir. 2004) (quoting 9 U.S.C. § 202)). Under the statute, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." 9 U.S.C. § 203. The same section states that district courts "shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." Id. The Court may compel arbitration, appoint arbitrators, and confirm arbitral awards. Id. §§ 206–07.

Courts enforce arbitration agreements under the New York Convention when four requirements are met: (1) there exists a written agreement to arbitrate; (2) the writing provides for arbitration in the territory of a party to the Convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope. U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 146 (2d Cir. 2001).

Although the federal policy favoring arbitration requires that "any doubts concerning the scope of arbitrable issues be resolved in favor of arbitration," nonetheless, "arbitrability questions are presumptively to be decided by the courts, not the arbitrators themselves." Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 406 (2d Cir. 2009). The presumption in favor of courts deciding whether an issue is arbitrable applies in cases arising under the New York Convention, id., and is overcome only by "clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator." Shaw Grp. Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003) (emphasis in original); see also Flores v. NFL, 658 F. Supp. 3d 198, 206 (S.D.N.Y. 2023) (quoting Contec Corp. v. Remote Sol. Co., 398 F.3d

205, 208 (2d Cir. 2005)).  Moreover, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."  Marino v. CVS Health, No. 23 Civ. 764 (VB), 2023 WL 6813098, at *5 (S.D.N.Y. Oct. 16, 2023) (quoting Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 71 (2010)).

## IV.  DISCUSSION

### A.  The Arbitration Provision Applies to Disputes Arising From the Note

The parties' dispute in this action boils down to which of them is stuck with the extra $4.5 million Spire paid to Rocket Lab to launch the Block 1 Satellites.  (See ECF Nos. 36 at 32, 35; 19-3).  Put simply, Spire says the Court must ignore the Framework Agreement and the events that led to the Note and look only to the discrete issue of whether NorthStar breached its promise to pay Spire the additional $4.5 million plus interest so Spire would use Rocket Lab. and.  (See ECF Nos. 27 at 18–21; 36 at 29).  Through that lens, Spire's logic follows, the dispute is one of breach of contract, which is well within the Court's common ambit and does not require looking beyond the four corners of the Note.  That argument has some initial appeal to simplicity.  The issue the Court confronts today, however, is not whether NorthStar breached the Note but whether the parties agreed to arbitrate that dispute.  Even confined to its four corners, the Note itself incorporates the parties' relationship under the Framework Agreement.  (ECF No. 19-3 at 2, 5). Moreover, NorthStar is correct that context matters in reaching a conclusion on this issue of arbitrability.  (See generally ECF No. 34).

The dispositive question here is a simple matter of contract interpretation, albeit not the one Spire presses: before reaching the merits of Spire's claims under the Note, does the Arbitration Provision compel their arbitration?  It does.  Before explaining why the disputes here

must go to arbitration, the Court notes that jurisdiction is uncontested, and—in any event—is proper. See 9 U.S.C. § 205 (providing for removal to federal district courts of disputes in state courts concerning arbitration agreements or awards falling under the New York Convention); Coinbase, Inc. v. Suski, 602 U.S. 143, 152 (2024) (holding that "a court, not an arbitrator, must decide whether the parties' first agreement was superseded by their second"); Cathay Cap. Holdings II, LP v. Zheng, No. 20 Civ. 1365 (JBA), 2021 WL 3661146, at *3 (D. Conn. Aug. 18, 2021) (explaining that removal and jurisdiction were proper because the dispute "relates to" at least one arbitration agreement between the parties subject to the New York Convention).

Coinbase and § 205 of the FAA direct the Court to decide this arbitrability dispute. Coinbase, 602 U.S. at 145; 9 U.S.C. § 205. NorthStar invokes the first-filed rule, arguing that this question of arbitrability must go to the arbitrators in the first instance because NorthStar filed the ICC arbitration before Spire commenced this action and citing ICC Arbitration Rule 6.5—to which both parties agreed—"any decision as to the jurisdiction of the arbitral tribunal . . . shall be taken by the arbitral tribunal itself." (ECF Nos. 20 at 11 n.3; 36 at 4). Spire disagrees and is correct. (See ECF No. 36 at 38). We are of course aware, however, that Spire previously agreed to the ICC's rules and to arbitration of disputes concerning the parties' business relationship in the context of the Framework Agreement but changed its tune when this dispute landed in this Court. In any event, we must decide the interpretative dispute between the Arbitration Provision and the Governing Law Provision in the first instance. See 9 U.S.C. § 205; Coinbase, 602 U.S. at 152.

On, then, to whether Spire's claims must go to arbitration. Applying the four factors outlined in U.S. Titan, we note first that—aside from NorthStar's argument about the first-filed

11

rule—there is no "clear and unmistakable evidence that the parties intended questions of arbitrability" be "decided by the arbitral panel in the first instance," and the parties do not contest that the Court may decide whether they agreed to arbitrate the disputes arising from the Note. Schneider v. Kingdom of Thailand, 688 F.3d 68, 72–73 (2d Cir. 2012). (See generally ECF Nos. 20; 27; 34). Second, the Arbitration Provision is written, involves subject matter that is commercial in nature and not entirely domestic in scope (space satellites, images, and technology), and provides for arbitration in Canada, which is a party to the New York Convention.[4] See U.S. Titan, 241 F.3d at 146. Third, all here agree that the Arbitration Provision of the Framework Agreement is valid and enforceable. (ECF Nos. 27 at 16; 34 at 5). Fourth, and the source of the present conflict between the parties, the Arbitration Provision is broad and encompasses some claims or disputes arising from the Note. All four factors therefore weigh in favor of enforcing the Arbitration Provision to require arbitration of Spire's claims.

NorthStar contends that: (i) the New York Convention applies to the Framework Agreement because it is an international commercial contract to which the presumption of arbitrability applies; (ii) the Arbitration Provision is both valid and broad, so it encompasses Spire's claims, which "aris[e] out of or in connection with [the Framework Agreement] or its subject matter"; and, (iii) the Note does not supplant the Arbitration Provision. (ECF No. 20 at 19–29). In response, Spire argues that: (i) the Framework Agreement and the Note "constitute separate and distinct relationships between the parties"; (ii) issues arising from the Note do not require construction of the Framework Agreement; and (iii) the Governing Law Provision in the

---

[4] See Contracting States, The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, https://www.newyorkconvention.org/contracting-states.

Note and not the Arbitration Provision applies here.  (ECF No. 27 at 16–26).  NorthStar has the better position.

A plain reading of the Arbitration Provision and the Note command arbitration of Spire's claims.  Recall that the Arbitration Provision states that "[a]ny dispute or claim arising out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims) shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules."  (ECF No. 19-1 at 37).  That is certainly a broad arbitration provision.  See, e.g., Spinelli v. Nat'l Football League, 96 F. Supp. 3d 81, 100 (S.D.N.Y. 2015) ("Clauses requiring arbitration of disputes 'arising out of or in connection with' underlying contracts are considered 'broad' arbitration clauses.").  Accordingly, disputes arising from or "involving matters going beyond the 'interpretation or enforcement of particular provisions' of the" Framework Agreement are given the "presumption of arbitrability."  Id.

Again, Spire does not challenge the validity of the Arbitration Provision, only its applicability, arguing that the Note must be read apart from the Arbitration Provision because it is a distinct contract that evidences a separate relationship between the parties.  (See ECF No. 27 at 16–18).  Spire cites Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391(2d Cir. 2015), for that proposition.  (ECF No. 27 at 16–18).  The plaintiffs in Holick started working for the defendant as independent contractors, and the parties signed a contract that required dispute resolution first by mediation and then by legal action in court.  802 F.3d at 393.  Later, the plaintiffs became full-time employees of the defendant and signed a second contract that provided for arbitration of "[a]ll claims, disputes, or controversies arising out of, or in relation to" the employment contract.

Id. The Second Circuit affirmed the District Court's denial of the defendant's motion to compel arbitration because the parties' first contract was in effect at the time the plaintiffs' claims in the case arose. Id. at 393, 399. Holick, so says Spire, supports its contention that the Framework Agreement and the Note are separate contracts that include two distinct dispute resolution mechanisms, and the relationship differences between the parties and the two contracts here demonstrate "'positive assurance' that the parties did not intend for disputes arising under the Note to be arbitrated." (ECF No. 27 at 17–18). Spire's position does not hold water. NorthStar is correct that the Note "did not transform the legal status of the parties' business relationship" and it "operat[es] simultaneously[,]" or concurrently, with the Framework Agreement, unlike the contracts in Holick, which ran consecutively and did change the parties' legal relationship. See 802 F.3d at 393; (ECF Nos. 34 at 11; 36 at 18).

Unfortunately for Spire, the Note specifically states that it was "issued for business purposes and evidences a deposit for services to be rendered by [Spire] under the Spire Agreement[,]" i.e., the Framework Agreement. (ECF No. 19-3 at 2, 5; see p. 3, supra). Furthermore, the Note provides that interest "shall accrue daily from the payable date of the invoice to which a principal amount funded under this Note relates pursuant to the terms of the Spire Agreement[.]" (Id. at 2). Even if we were to set aside the $4.5 million principal, Spire successfully negotiated for interest on that sum and agreed to an accrual date based on the Framework Agreement. (Id.) Collateral or not, the Note must be read in conjunction with the Framework Agreement, i.e., the former's purpose was to pay Rocket Lab the funds necessary to launch the Block 1 Satellites under the latter. (See generally ECF Nos. 19-3; 27-2; see also ECF No. 36 at 9–10).

The remaining question is whether the Note contracts around the Arbitration Provision. (ECF Nos. 20 at 24–29; 27 at 18–26; 34 at 7–14).  Although parties may provide in a second contract that the broad arbitration clause in their first contract will not apply to disputes arising out of their second contract, to do so the second contract must evidence a "specific intent" or "positive assurance" of such agreement.  Shehadeh v. Horizon Pharma USA, Inc., No. 20 Civ. 8107 (AT), 2021 WL 4176254, at *3 (S.D.N.Y. Sept. 14, 2021); see Offshore Expl. & Prod. LLC v. Morgan Stanley Priv. Bank, N.A., 626 F. App'x 303, 306–07 (2d Cir. 2015) (summary order) (discussing differences in application of permissive versus "all-inclusive and mandatory" forum selection clauses in arbitrability disputes).  The Governing Law Provision makes no mention of arbitration, compels only NorthStar to suing based on the Note in the New York courts, and does not restrict the forum or tribunal in which Spire may seek relief for disputes arising from the Note.  (ECF No. 19-3 at 8).  It is not an "all-inclusive and mandatory" provision, so it "should be read 'as complementary to [the] agreement to arbitrate.'"  Offshore, 626 F. App'x at 306–07 (quoting Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth., 764 F.3d 210, 215 (2d Cir. 2014)).  In other words, the Governing Law Provision is not all-inclusive because it applies only to actions NorthStar initiates against Spire under the Note and it lacks a merger clause, so it must be read as complementary to, not in place of, the Arbitration Provision.  See Offshore, 626 F. App'x at 307.  Spire's claims arising from the Note here are subject to the Arbitration Provision because the Governing Law Provision does not limit Spire's avenues for recourse against NorthStar, while the Arbitration Provision does.  (Compare ECF No. 19-1 at 37 with ECF No. 19-3 at 8).

Spire reads the Arbitration and Governing Law Provisions a different way, in reliance on Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC, 645 F.3d 522, 525 (2d Cir. 2011).  (ECF No. 36

at 27—29). Applied Energetics, however, involved a provision in the parties' second contract that directly conflicted with the arbitration provision in their first contract: the arbitration provision in the first contract applied to "'any . . . dispute' arising out of [the parties'] contractual relationship[,]" while the second contract included a "non-exclusive forum selection clause" that applied to "any action or proceeding" brought between the parties under the second contract. 645 F.3d at 525. The Second Circuit held that the arbitration provision did not apply to the parties' second contract because both provisions were "all-inclusive, [] mandatory, and neither admit[ted] the possibility of the other." Id. No such conflict exists here. Moreover, the parties' second contract in Applied Energetics included both a merger clause and a provision stating that "the rights and remedies provided [herein] are cumulative and not exclusive of any rights or remedies provided under any other agreement." Id. Neither are included in the Note.

Having determined that the Arbitration Provision applies to Spire's claims, the Court also concludes that Spire "refused to arbitrate" by filing this action, and the parties are therefore compelled to arbitrate Spire's claims arising from the Note. Mongolia, 11 F.4th at 162; Gordon, 2023 WL 2138693, at *9 (quoting Mongolia, 11 F.4th at 162) ("A party has refused to arbitrate if it commences litigation or is ordered to arbitrate the dispute by the relevant arbitral authority and fails to do so.").

### B. The Case is Stayed Pending Arbitration

Although NorthStar requests a stay of this action pending arbitration pursuant to the Court's inherent powers, a stay pursuant to 9 U.S.C. § 3 is appropriate. (ECF Nos. 20 at 29; 34 at 14). The Court is "satisfied that the issue involved in [this] suit . . . is referable to arbitration," and stays the action pending arbitration. 9 U.S.C. § 3.

## V. CONCLUSION

Accordingly, the Motion (ECF No. 18) is **GRANTED**, Spire is **COMPELLED** to arbitrate the disputes arising from of the Note presented in its motion for summary judgment in lieu of complaint (ECF No. 1-1) pursuant to the Arbitration Provision, and this case is **STAYED** during the pendency of the arbitration.

On or before **April 30, 2025**, the parties shall file a joint report setting forth the status of the arbitration proceedings and shall file another such report every sixty (60) days thereafter until the arbitration has concluded.

The Clerk of Court is respectfully directed to close ECF No. 18.

Dated:     New York, New York
           February 24, 2025

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge