**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SPIRE GLOBAL SUBSIDIARY, INC., | Case No. 1:24-cv-08434-JHR-SLC |
| Plaintiff, | |
| -against- | (DOCUMENT FILED ELECTRONICALLY) |
| NORTHSTAR EARTH & SPACE INC., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**OBJECTION TO THE REPORT AND RECOMMENDATION**

**FAEGRE DRINKER BIDDLE & REATH LLP**
Brian P. Morgan
W. Joshua Lattimore

1177 Avenue of the Americas, 41st Floor
New York, New York 10036
Tel.: (212) 248-3140
Brian.Morgan@faegredrinker.com
Joshua.Lattimore@faegredrinker.com

*Attorneys for Plaintiff Spire Global Subsidiary, Inc.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ....................................................................................................... 1

FACTS AND PROCEDURAL HISTORY ...................................................................................... 2

      A.    The Framework Agreement. .................................................................................. 2

      B.    The Note. ............................................................................................................... 3

      C.    The Interim Injunction and NorthStar's Deteriorating Financial Condition. ......... 5

      D.    The ICC Arbitration. ............................................................................................. 6

      E.    NorthStar Defaulted on the Note. ......................................................................... 8

      F.    Spire's Motion for Summary Judgment in Lieu of Complaint. ............................. 8

      G.    NorthStar's Motion to Compel Arbitration. .......................................................... 9

STANDARD OF REVIEW ............................................................................................................ 9

ARGUMENT ................................................................................................................................. 9

I.      The Arbitration Clause in the Earlier-Executed Framework Agreement Does Not
      Apply to Disputes Arising Under the Later-Executed Note. ........................................... 10

II      Issues Arising Under the Note Do Not Require Construction of the Framework
      Agreement. ...................................................................................................................... 14

III.     The Court Should Reject NorthStar's Request to Disregard the Parties'
      Agreement on the Appropriate Forum for Disputes Arising under the Note. .................. 16

CONCLUSION ............................................................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*,
    645 F.3d 522 (2d Cir. 2011)......................................................................................17, 18

*Boggs v. Town of Riverhead*,
    2020 WL 1929076 (E.D.N.Y. Apr. 20, 2020) ........................................................9

*Coinbase, Inc. v. Suski*,
    602 U.S. 143 (2024)....................................................................................................17

*Cornell Univ. v. UAW Local 2300*,
    942 F.2d 138 (2d Cir. 1991).......................................................................................14

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
    561 U.S. 287 (2010)................................................................................................9, 10

*Holick v. Cellular Sales of N.Y., LLC*,
    802 F.3d 391 (2d Cir. 2015)...............................................................9, 10, 12, 13, 14

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*,
    309 F.3d 76 (2d Cir. 2002).........................................................................................18

*Lewis v. N.J. Sports Prods., Inc.*,
    2003 WL 1090279 (S.D.N.Y. Mar. 12, 2003) ...........................................10, 11, 16

*MacNamara v. City of New York*,
    249 F.R.D. 70 (S.D.N.Y. 2008) ..................................................................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)....................................................................................................10

*Offshore Expl. & Prod., LLC v. Morgan Stanley Private Bank, N.A.*,
    626 F. App'x 303 (2d Cir. 2015) ...............................................................16, 17, 18

*Rosen v. Mega Bloks Inc.*,
    2007 WL 1958968 (S.D.N.Y. July 6, 2007) .............................................10, 14, 15

*Snyder v. Wells Fargo Bank, N.A.*,
    2011 WL 6382707 (S.D.N.Y. Dec. 19, 2011) ........................................................14

*Walker v. Thompson*,
    404 F.Supp.3d 819 (S.D.N.Y. 2019)........................................................................18

**Statutes, Rules & Regulations**

28 U.S.C. § 1332 ...................................................................................................................8

28 U.S.C. § 1441 ...................................................................................................................8

28 U.S.C. § 1446 ...................................................................................................................8

Fed. R. Civ. P. 72(a) .........................................................................................................1, 9

Plaintiff Spire Global Subsidiary, Inc. ("Spire") respectfully submits this Memorandum of Law in support of Spire's objection pursuant to Fed. R. Civ. P. 72(a) to the Magistrate's Opinion and Order ("Order"), which granted the Motion of Defendant NorthStar Earth & Space, Inc. ("NorthStar") to Compel Arbitration and to Stay This Case (the "Motion to Compel Arbitration").

## PRELIMINARY STATEMENT

This case presents the straightforward interpretation of the parties' intent with regard to a single, narrow issue:  which forum should hear a dispute arising under a promissory note.  The promissory note unambiguously provides that this Court is the proper forum, and for that reason the Magistrate erred in granting NorthStar's Motion to Compel Arbitration based on an arbitration provision in an earlier-executed agreement.

New York law recognizes that parties are free to enter into multiple contracts governing different aspects of their business relationship.  Here, Spire and NorthStar are parties to a Framework Agreement (as defined herein) whereby Spire agreed to launch and operate satellites to obtain and provide to NorthStar a certain number of satellite images.  When NorthStar lacked the financial resources to pay certain amounts to a third party in connection with the launch, Spire, at NorthStar's request, advanced those funds and agreed to accept repayment in the form of a promissory note (the "Note").  With full knowledge of the international arbitration provision contained in the Framework Agreement, the parties nevertheless specifically negotiated and selected a different forum to resolve disputes arising under the Note — New York state and federal courts.

Pursuant to the Note, NorthStar unconditionally promised to repay to Spire $4.5 million, together with interest, on or before October 20, 2024.  Prior to any payment being due under the Note, a dispute arose between the parties regarding their respective obligations under the Framework Agreement.  NorthStar sought an interim injunction from a Canadian court in Ontario

and, when testifying in support of the requested injunction in September 2024, NorthStar's CEO unequivocally reaffirmed its intention to repay the Note when it came due the following month. After obtaining the injunction, NorthStar commenced an arbitration before the International Chamber of Commerce (the "ICC Arbitration").  NorthStar then opportunistically reversed itself, asserting in the ICC Arbitration that it should be relieved of its obligation to pay Spire the amount due under the Note, even though the Note was not due at the time NorthStar filed the ICC Arbitration, and NorthStar had previously reaffirmed its intention to repay the Note.

When NorthStar failed to make the required payment under the Note, in October 2024, Spire, in contrast to NorthStar, complied with forum selection provision in the Note and commenced an action in New York Supreme Court for summary judgment in lieu of complaint. NorthStar removed the case to this Court.

The Order granting NorthStar's Motion to Compel Arbitration in Canada and stay this action undermines the parties' intentions and expectations, as memorialized in the Note, and frustrates Spire's ability to obtain prompt relief in the bargained-for forum.  Spire's action does not implicate the issues being arbitrated, as this Court need not interpret the Framework Agreement or adjudicate the parties' rights and obligations thereunder in order to decide the narrow issue of whether NorthStar is in default under the Note.  This Court should therefore reverse the Order and deny NorthStar's Motion to Compel Arbitration.

## FACTS AND PROCEDURAL HISTORY

### A.    The Framework Agreement.

In March 2022, Spire and NorthStar entered into the Constellation Services Framework Agreement (the "Framework Agreement").  (Declaration of Sylvia E. Simson ("Simson Decl."), Ex. 1 at ECF 19-1 p. 3.)  Under the Framework Agreement, Spire agreed to "manufacture, launch,

and operate satellites with low light imagers," and NorthStar was to "order satellites to obtain a certain number of images per day." (*Id.*)

NorthStar agreed to "pay the Fees in accordance with the terms of the Fees Schedule and as otherwise specified" in the Framework Agreement. (*Id.* p. 26.) The Fees Schedule provides for monthly Set-Up Fees and Service Fees. (*See id.* p. 64.) And the Framework Agreement defines "Fees" as "[t]he Fees to be paid by [NorthStar] to Spire, as further described in the Fees Schedule." (*Id.* p. 6.) "Service Fees" are defined as "fees relating to the operation of a Block during its Service Period and described as Service Fees in the Fees Schedule." (*Id.* p. 10.) And "Set-Up Fees" are defined as "fees applicable to development of the Payload for Block 1 and described as Set-Up Fees in the Fees Schedule." (*Id.* p. 11.) NorthStar has the right to "dispute the Fees invoiced in good faith by notifying Spire as soon as possible" and to "withhold payment of the disputed amount." (*Id.* p. 26.)

The Framework Agreement also contains an arbitration provision: "Any dispute or claim arising out of or in connection with this Agreement or its subject matter or formation (including non-contractual disputes or claims) shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce . . . ." (*Id.* p. 37.) And it contains a standard integration clause, providing in relevant part that the Framework "Agreement constitutes the entire agreement between the Parties regarding the subject matter hereof." (*Id.* p. 36.)

The parties amended the Framework Agreement's "Schedule 1" service order and the "Fees Schedule" twice. (*Id.* pp. 83, 88.) And, in October 2023, the parties amended the Framework Agreement itself, including the Fees Schedule. (*See id.* p. 93.)

### B.    The Note.

In August 2023, when NorthStar's initial launch provider went into bankruptcy, NorthStar secured an alternative launch provider, Rocket Lab that would cost $4.5 million more than the

initial launch provider.  (Declaration of Brian P. Morgan ("Morgan Dec."), ECF 27-1, Ex. A at ECF 27-2 624:25-628:17; Order at 3-4.)  Spire paid the $4.5 million additional cost, and NorthStar issued the Note to repay Spire for that amount.  (*Id.* 625:24-626:4; Order at 3-4.)  Spire paid that amount because NorthStar did not have the $4.5 million to pay the additional launch fee at that time.  (*Id.* 627:9-628:2.)

Accordingly, at the time the parties amended the Framework Agreement in October 2023, the parties also entered into the Note, dated October 20, 2023.  (*See* Simson Decl., Ex. 3 at ECF 19-3 p. 2.)  Notwithstanding their awareness of the arbitration agreement in the Framework Agreement, the parties nevertheless negotiated for and included a different forum selection provision in the Note:

> **It is intended that this Note will be construed and enforced in accordance with the substantive laws of the State of New York without reference to principles of conflicts of law.**  [NorthStar] irrevocably and unconditionally agrees that it will not commence any action, litigation or proceeding of any kind or description . . . against [Spire], in any forum other than **the courts of the State of New York sitting in New York County, and of the United States District Court of the Southern District of New York** . . . and **each of the parties hereto irrevocably and unconditionally submits to the *exclusive jurisdiction* of such courts and agrees that all claims in respect of any such action, litigation and proceeding may be heard and determined in such New York State court or . . . in such federal court.**  Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions . . . .  **[NorthStar] irrevocably and unconditionally waives, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Note in any court referred to in this paragraph and irrevocably waives, to the fullest extent permitted by applicable law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.**

(Simson Decl., Ex. 3 at ECF 19-3 p. 8) (emphasis added.)

C.    **The Interim Injunction and NorthStar's Deteriorating Financial Condition.**

On August 9, 2024, NorthStar filed an application before the Ontario Superior Court of Justice for an interim injunction, alleging that Spire breached the Framework Agreement by not providing adequately functioning satellites and requesting, in light of NorthStar's intent to commence arbitration in the International Court of Arbitration (the "ICC"), that the Ontario court order Spire to keep certain satellites in orbit and continue providing images until replacement satellites are placed into commercial operation. (*See* Simson Decl., Ex. 4 at ECF 19-4 p. 3; Simson Decl., Ex. 5 at ECF 19-5 p. 26.)

After an evidentiary hearing, Justice Kimmel of the Ontario Superior Court of Justice, "[w]ithout having had a full opportunity to review and consider all of the evidence," found that the satellites "could be operated in a manner that is compliant with some of the requirements" under the Framework Agreement. (Simson Decl., Ex. 4 at ECF 19-4 p. 8.) The court therefore granted the interim relief NorthStar requested, ordering Spire to continue to operate the at-issue satellites and to provide NorthStar with images. (*Id.* p. 17.) The court also ordered NorthStar to commence the ICC Arbitration immediately. (*Id.*)

At the time of the hearing, Stewart Bain, NorthStar's CEO, assured Spire and the Ontario Court that it was NorthStar's intent to pay the Note in full on the October 20, 2024 Maturity Date and that it would be paid:

Q.    As the CEO of NorthStar, can you confirm that the debt owed to Spire under the promissory note, which will be then in excess of $5 million, will be paid in full on October 20, 2024?

A.    That's NorthStar's intent from the beginning of signing the promissory note.

Q.    So you're confirming that it will be paid on October 20, 2024?

A.    Yes.

(Morgan Dec., Ex. A at ECF 27-2 628:8-17.)  Mr. Bain made that representation under oath "to alleviate the Ontario Court's concerns regarding the financial harm that would be caused to Spire by the grant" of the interim injunction "and NorthStar's ability to satisfy its undertaking as to damages." (Simson Decl., Ex. 10 at ECF 19-10 p. 9.)  Of course, "[o]nce NorthStar obtained the interlocutory relief it sought, it failed to pay the [Note], contrary to what it stated under oath." (*Id.*)

        **D.**     **The ICC Arbitration.**

On September 20, 2024, NorthStar submitted its Request for Arbitration ("Request") before the ICC.  (Simson Decl., Ex. 5 at ECF 19-5 p. 2.)  NorthStar's Request alleges that Spire breached Sections 12.1 and 12.2 of the Framework Agreement.  (*Id.* pp. 4, 29-30.)  According to NorthStar, certain satellites are in a state of failure and cannot "deliver the services Spire agreed to provide under the [Framework] Agreement," and Spire failed in its obligation to replace them. (*Id.* p. 6.)  NorthStar seeks reimbursement of payments made to Spire, as well as confirmation that it need not make further payments, and further damages NorthStar alleges it suffered.  (*Id.*) NorthStar has also requested in the ICC Arbitration that it be relieved of any obligation to make payments to Spire under the Note or, alternatively, that such payments be a set-off to any damages awarded to NorthStar by way of Spire's alleged breach of the Framework Agreement.  (*Id.* p. 31.)

On October 30, 2024, Spire submitted its Answer to NorthStar's Request for Arbitration and Counterclaim ("Answer").  (Simson Decl., Ex. 10 at ECF 19-10 p. 2.)  Spire explained that "many reasons, including the harsh environment of space and the technical complexities of the involved satellites" caused the parties to acknowledge in the Framework Agreement the possibility that satellites may not operate properly and to provide for contingencies in such an event.  (*Id.* p. 5.)  On the critical issue of whether Spire has an obligation under the Framework Agreement to place satellites into commercial operation that have failed the "checkout & commissioning" process, Spire has asserted that it has no obligation to put those failed satellites into operation.

(*Id.*)  That is, while the Framework Agreement provides that failed satellites must be replaced, it does not require Spire to put failed satellites into service.  (*Id.* p. 6.)  Through arbitration, Spire maintains, NorthStar is attempting to evade the bargained-for liabilities associated with the known risk of failed satellites.  (*Id.*)  Moreover, NorthStar's position is inconsistent because it demands both replacement satellites and a refund of its payments to Spire.  (*Id.* p. 7.)  Meanwhile, Spire has recognized its obligation to replace the failed satellites, but NorthStar has refused to accept a reasonable timeframe for that to occur.  (*Id.*)

Spire disputes NorthStar's characterization of the dispute at issue in the ICC Arbitration, denies that it is in breach of the Framework Agreement, and is vigorously defending that claim in ICC Arbitration.  (*See generally* Simson Decl., Ex. 10 at ECF 19-10.)  And Spire disputes the assertion that the ICC Arbitration will resolve Spire's claim for payment under the Note.  (*See* NorthStar Br. at ECF 20 p. 30.)  With regard to the Note, Spire made clear in its Answer that "any dispute under the [Note]" is "governed by New York law and is outside the scope of the Arbitration Agreement" in the Framework Agreement.  (Simson Decl., Ex. 10 at ECF 19-10 pp. 20, 23.)  The Note, Spire explained, "was negotiated and entered into by the Parties after the Framework Agreement and in the knowledge that the Framework Agreement had an ICC arbitration agreement," yet the parties "deliberately decided not to have any dispute relating to the [Note] determined by arbitration."  (*Id.* p. 24.)

Spire asserted a counterclaim in the ICC Arbitration.  (*Id.* p. 25.)  Spire has asserted that the Framework Agreement does not require Spire to put any satellite into operation that has failed the "checkout & commissioning" process.  (*Id.*)  Through the interim injunction, Spire was compelled to put those failed satellites into operation without any meaningful payment from NorthStar to do so.  (*Id.*)  Spire therefore suffered damages as a result of the injunction and

continues to incur damages on a daily basis. (*Id.*) Spire did not assert any right to payment under the Note in its counterclaim. (*Id.* pp. 25-27.)

### E. NorthStar Defaulted on the Note.

The Note sets forth nine events constituting an "Event of Default," including "the failure by [NorthStar] to make any payment due and payable hereunder." (Simson Decl., Ex. 3 at ECF 19-3 pp. 5-6.) Upon any Event of Default, "the principal balance of [the] Note and interest accrued thereon shall be and become immediately due and payable." (*Id.*) And, upon such a default, the Note permits Spire to "declare immediately due and payable the principal balance of [the] Note and interest accrued thereon and [to] take such actions and commence such proceedings as may be permitted by law" without "any additional notice, presentment, demand, protest, notice of protest, dishonour or any other action." (*Id.*) In addition, upon default, NorthStar agreed that "interest shall accrue . . . at an annual rate equal to 18% per annum," and "to pay on demand all costs and expenses of collecting or enforcing payment under [the] Note, including attorneys' fees and legal expenses." (*Id.* pp. 2, 7.)

As of the October 20, 2024 Maturity Date, the principal sum of $4,500,000.00, together with interest became due and payable. (Condor Aff. ¶ 19.) NorthStar did not make the payment required under the Note as of the October 20, 2024 Maturity Date, which constitutes an Event of Default. (*Id.* ¶ 20.)

### F. Spire's Motion for Summary Judgment in Lieu of Complaint.

Pursuant to the forum-selection provision of the Note, and in light of NorthStar's default, on October 22, 2024, Spire commenced an action for summary judgment in lieu of complaint in the New York Supreme Court of New York County, Index No. 655584/2024. (*See* ECF 1-1.) NorthStar removed that case to this Court on November 5, 2024, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (*See* ECF 1.) The Court stayed further briefing on the motion for summary

judgment in lieu of complaint, pending its determination on NorthStar's Motion to Compel Arbitration.  (ECF 25.)

G.    **NorthStar's Motion to Compel Arbitration**

On December 17, 2024, NorthStar filed its Motion to Compel Arbitration.  (ECF 18-20.) Spire filed an opposition to the motion (ECF 27), and NorthStar submitted a reply.  (ECF 34.) Magistrate Judge Sara L. Cave heard an oral argument on February 12, 2025, (ECF 36), and issued the Order granting NorthStar's Motion to Compel Arbitration and staying the case on February 24, 2025.  (ECF 38.)

## STANDARD OF REVIEW

A magistrate judge's order may be set aside if it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a);  *See MacNamara v. City of New York*, 249 F.R.D. 70, 77 (S.D.N.Y. 2008). "A finding is clearly erroneous if the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Boggs v. Town of Riverhead*, 2020 WL 1929076, at *2 (E.D.N.Y. Apr. 20,  2020) (holding a magistrate judge's order should be set aside because it was contrary to law) (internal quotations and citation omitted).  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure."  *Id*. (internal quotations and citation omitted).

## ARGUMENT

Arbitration should not be compelled, unless (1) "the parties agreed to arbitrate" and (2) "the scope of that agreement encompasses the claims at issue."  *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015).  The Supreme Court has "never held" that the federal policy favoring arbitration "overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.'"  *Granite Rock Co. v. Int'l Bhd. of Teamsters*,

561 U.S. 287, 299, 302 (2010) (describing the "first principal that underscores all of [the Court's] arbitration decisions: Arbitration is strictly 'a matter of consent.'") (citations omitted).

Even the "presumption of arbitrability" "does not alter the fact that the ultimate purpose of the Court's inquiry is to determine whether the parties intended that the particular claims at issue here be arbitrated." *Rosen v. Mega Bloks Inc.*, 2007 WL 1958968, at *8 (S.D.N.Y. July 6, 2007); *Lewis v. N.J. Sports Prods., Inc.*, 2003 WL 1090279, at *2 (S.D.N.Y. Mar. 12, 2003) ("federal law does not require parties to arbitrate when they have not agreed to do so") (internal quotes and citations omitted). That principle applies with equal force to international disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute").

In the Order, the Magistrate recognizes that "arbitration remains a creature of contract," requiring courts to determine whether a given "dispute falls within the scope of the agreement to arbitrate." (Order at 7-8 (quotes and citations omitted)). NorthStar's Motion to Compel Arbitration should have been denied accordingly, because a review of the relevant contractual agreements demonstrates that disputes arising under the Note — *i.e.*, NorthStar's failure to repay the amount due — are not subject to arbitration under the Framework Agreement.

## I.    The Arbitration Clause in the Earlier-Executed Framework Agreement Does Not Apply to Disputes Arising Under the Later-Executed Note.

The law in the Supreme Court, the Second Circuit, and this Court is clear: parties may not be compelled to arbitrate disputes they did not agree to submit to arbitration. *See Granite Rock*, 561 U.S. at 287 ("Court may order arbitration of a particular dispute only where the court is satisfied the parties agreed to arbitrate *that dispute*") (emphasis in original); *Holick*, 802 F.3d at 395 ("a party cannot be required to submit to arbitration any dispute which [it] has not agreed to

submit") (internal quotations and citation omitted); *Lewis v. N.J. Sports Prods.*, Inc., 2003 WL 1090279, at *2 (S.D.N.Y. Mar. 12, 2003) ("federal law does not require parties to arbitrate when they have not agreed to do so.").

Thus, when ascertaining which of two competing dispute resolution clauses contained in separate agreements governs, courts focus on the particular dispute to be litigated.   To that end, the Order correctly recognizes that "context matters in reaching a conclusion on the issue of arbitrability." (Order at 10.)  However, the Magistrate clearly erred in concluding that Spire agreed to arbitrate all disputes generally "concerning the parties' business relationship" and therefore the arbitration clause encompasses "disputes arising under the Note." (*Id.* at 11-12.)  To the contrary, the arbitration clause in the Framework Agreement limits its scope to disputes or claims "arising out of or in connection with this Agreement or its subject matter or formation." (*See* Simson Decl., Ex. 1 at ECF 19-1 p. 37.)  And Spire's claim for repayment of the amounts owed under the Note *does not* arise out of the Framework Agreement or its formation, but rather arises from NorthStar's obligations under the later-executed Note.

The "context" here is as follows.  In March 2022, the parties entered into the Framework Agreement, under which Spire agreed to "manufacture, launch, and operate satellites with low light imagers," and NorthStar agreed to "order satellites to obtain a certain number of images per day." (Simson Decl., Ex. 1 at ECF 19-1 p. 3.)  The Framework Agreement sets forth and defines the "Fees" that are to be paid by NorthStar to Spire for services rendered under the Framework Agreement.  (*Id.* p. 6.)  Those include monthly "Set-Up Fees" and "Service Fees," which are carefully defined in the Framework Agreement.  (*Id.* pp. 10-11.)  In October 2023, more than a year and a half later, the parties entered into the Note.  (*See* Simson Decl., Ex. 3 at ECF 19-3 p. 2.)  The Note is not for "Fees" owed under the Framework Agreement, but rather memorializes the

parties' latter agreement, pursuant to which Spire agreed to advance funds to NorthStar's preferred launch services provider, Rocket Lab, and NorthStar agreed to repay those funds within one year. (*Id*. p. 2.)

Thus, in suing NorthStar to collect on the Note, Spire is not trying to collect "Fees" owed under the Framework Agreement.  Instead, Spire is seeking to enforce NorthStar's separate obligation, under the Note, to repay the amounts that Spire paid to the launch provider on NorthStar's behalf.  This dispute is not a dispute arising out of the Framework Agreement. The Framework Agreement does not contemplate Spire paying NorthStar's launch fees.  When that issue arose, the parties entered into a separate agreement, and agreed to a separate dispute resolution mechanism.

New York law recognizes that parties are free to enter into multiple contracts, governing different aspects of their business relationships.  *See Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391 (2d Cir. 2015).  The Order acknowledges the Second Circuit's holding in *Holick v. Cellular Sales of N.Y., LLC* but reaches the wrong conclusion on its authority in this case.  (*See* Order at 14.)  The Magistrate opines that *Holick* does not govern this dispute because the parties' separate agreement in that case ran consecutively, rather than concurrently, as here.  (*See id.*) Respectfully, this cursory dismissal gives short shrift to critical aspects of the Second Circuit's analysis.

In *Holick*, the plaintiffs were independent contractors of the defendants under a contract that did not contain an arbitration provision.  802 F.3d 391, 393-94 (2d Cir. 2015).  The plaintiffs later executed an employment contract when they were formally hired by the defendants, which did contain an arbitration provision.  *Id*.  Then, the plaintiffs asserted causes of action related to events that arose when they were independent contractors, prior to their formal employment.  *Id*.

at 394. The Court held that the arbitration provision in the employment agreement evinced "positive assurance" that the parties did not intend to arbitrate issues arising prior to execution of the employment contract because the events giving rise to the plaintiffs' dispute arose outside the parties' relationship as employee/employer (*i.e.*, when they were independent contractors) and because the parties designated a separate dispute resolution mechanism under the previous independent contractor agreement. *Id.* at 398. The parties' "evolving business relationship [was] directly relevant" to the question of whether they had agreed to arbitrate disputes, and the independent contractor dispute did "not touch matters covered by an arbitration clause" related to their employee/employer relationship. *Id.* Despite a finding that the arbitration provision in the employment agreement was "broad," the appellate court focused on whether the dispute arose out of the specific relationship governed by that employment agreement. *Id.* at 396. The court specifically found that it should examine not only the temporal scope of the agreement, but "whether the parties intended for the arbitration clause to cover *the present dispute*." *Id.* at 398. To that end, the court looked at the parties' relationship as defined under the separate agreements, finding that "the more salient factual allegation for assessing the arbitration agreement's scope" is how the parties "labeled" their relationship vis-à-vis the separate agreements. *Id.* "Contract law . . . is an area of law where labels matter." *Id.* at 399.

The same result should follow here. Despite the fact that both the Framework Agreement and the Note generally evidence a business relationship between the parties, as did both agreements in *Holick*, the relationship between the parties under each agreement is different, and each contract provides its own dispute resolution mechanism. (*Compare* Simson Decl., Ex. 1 at ECF 19-1 p. 37 *with* Simson Decl., Ex. 3 at ECF 19-3 p. 8.) Under the Framework Agreement, NorthStar is a "Customer" and Spire is a service provider (Simson Decl., Ex. 1 at ECF 19-1 p. 3), while under

13

the Note, NorthStar is a "Borrower" and Spire is the "Holder." (Simson Decl., Ex. 3 at ECF 19-3 p. 2.)  And, as explained above, the Note offers its own dispute resolution mechanism that is different from that in the Framework Agreement.  That difference in relationship between the parties *with respect to the dispute at issue*, as well as the divergent dispute resolution mechanisms, provides "positive assurance" that the parties did not intend for disputes arising under the Note to be arbitrated.  *See Holick*, 802 F.3d at 398.

## II.    Issues Arising Under the Note Do Not Require Construction of the Framework Agreement.

"[W]hile multiple documents executed at the same time and concerning the same subject-matter are required to be read together under New York law, this does not mean that arbitration clauses . . . can be lifted from one document and transferred to another," and the omission of an arbitration clause in one of the parties' agreements suggests the parties "*did not* agree to arbitrate disputes" arising under that agreement.  *Snyder v. Wells Fargo Bank, N.A.*, 2011 WL 6382707, at *5 (S.D.N.Y. Dec. 19, 2011); *see also Cornell Univ. v. UAW Local 2300*, 942 F.2d 138, 140 (2d Cir. 1991) (a "collateral instrument" with no arbitration provision, which was related to a separate agreement among the same parties that did contain an arbitration provision, created "an entirely distinct and different obligation" and disputes related to those separate obligations were not subject to arbitration).  And "portions of a claim may proceed under arbitration while others are advanced through litigation when that reflects the agreement of the parties."  *Snyder*, 2011 WL 6382707, at *5.

To illustrate, in *Rosen*, the plaintiffs and defendant entered into both a stock purchase agreement, which did not contain an arbitration provision and contained a forum-selection provision, and simultaneously into employment agreements, which contained an arbitration provision.  2007 WL 1958968, at *1-2.  When a dispute arose under the stock purchase agreement,

14

the defendants moved to compel arbitration, broadly arguing that the arbitration provision in the employment agreements was incorporated into the stock purchase agreement. *Id.* at *4. This Court rejected that argument, observing that "[t]he mere fact that a document is an 'integral part' of a larger transaction does not mean that any provision contained in that document must be applied to all other documents that are part of the same transaction," even if "the contractual documents were all executed at the same time." *Id.* at *5. "Parties are free to enter into multiple contracts as part of a single transaction without the provisions in one contract governing another contract." *Id.* The Court further found — notwithstanding that all the agreements were between the same parties, part of the same transaction, related to payments allegedly owed to the plaintiffs, and that the arbitration provision at issue was "broad" — that the plaintiffs' claim for payment under the stock purchase agreement was not subject to arbitration, in part because those claims did not "implicate any issues of construction of the Employment Agreements." *Id.* at *9. The Court did not accept the argument that the plaintiffs would "have to prove compliance with the Employment Agreements in order to prevail in their suit under the [stock purchase agreement.]" *Id.* at *10.

Here, the Magistrate erred in finding that the Note must "be read in conjunction with the Framework Agreement." (*See* Order at 14.) The Court's construction of the Note and determination of the parties' rights and obligations thereunder does not require any construction or application of the Framework Agreement. As set forth above, "Fees" under the Framework Agreement are carefully defined and are limited to those specific fees listed in the Fees Schedule attached to the Framework Agreement. *See supra* at 3. They do not include the funds that are owed under the Note, *i.e.,* $4.5 million plus interest. NorthStar's argument that calculation of interest owed under the Note requires interpretation of the Framework Agreement, which the Magistrate adopted, is a red herring. (Order at 14.) The Note itself provides the rate of interest –

the non-default interest rate is fourteen percent (14%), and the interest rate upon an event of default is eighteen percent (18%).  (Simson Decl., Ex. 3 at ECF 19-3 p. 2.)  The accrual date is the payable date of the invoice that Spire satisfied on NorthStar's behalf.  (*Id.*)  There is thus no need to consult the Framework Agreement, and indeed it would provide no clarity, on the amount owed by NorthStar under the Note.  In these circumstances, the motion to compel arbitration should have been denied.  *See Lewis*, 2003 WL 1090279, at *3 (arbitration provision in a "Tua Agreement" did not cover claims arising under a related "Multi-Fight Agreement": the agreements were not "inextricably related" and "disputes under the Multi-Fight Agreement can be resolved without any interpretation or consideration of the terms of the Tua Agreement").

**III.    The Court Should Reject NorthStar's Request to Disregard the Parties' Agreement on the Appropriate Forum for Disputes Arising under the Note.**

An arbitration provision in one contract does not apply where a separate contract "evidence[s] a 'specific intent' or 'positive assurance'" that the arbitration provision will not apply. (*See* Order at 15.)  Here, when drafting the Note, the parties could have included a similar arbitration clause to that contained in the Framework Agreement or incorporated it by reference. They did not do so, instead specifically negotiating for and agreeing to an entirely different dispute resolution mechanism, which provides for litigation in New York as opposed to arbitration in Canada.  If the parties intended for all disputes under the Note to be heard in ICC Arbitration in Canada, as NorthStar argued and the Magistrate endorsed, they would not have agreed to the forum selection clause, which gives New York courts ***exclusive jurisdiction*** over disputes arising out of the Note.

In an effort to justify this contradiction, the Order cites *Offshore Exploration & Production LLC* to draw a distinction between "permissive versus 'all-inclusive and mandatory' forum selection clauses in arbitrability disputes."  (*See id.*)  *Offshore Exploration* explains, however, that

"there is no requirement that the forum selection clause mention arbitration." *See Offshore Expl. & Prod., LLC v. Morgan Stanley Private Bank, N.A.*, 626 F. App'x 303, 306 (2d Cir. 2015). Rather, the Court must "determine[e] which contract applies" by examining "whether the parties agreed to send the given dispute to arbitration." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 150 (2024). The Magistrate therefore erred in relying on the fact that the Note's forum selection provision "makes no mention of arbitration" (Order at 15.)  And while the Magistrate concluded that the forum selection clause is not "all-inclusive," both Spire and NorthStar agreed to the "exclusive jurisdiction" of New York courts, and the clause expressly contemplates a suit by Spire against NorthStar being brought in this forum (otherwise, there would be no reason for NorthStar to waive any objection to venue or defense of inconvenient forum).  (Simson Decl., Ex. 3 at ECF 19-3 p. 8.)

The Order's attempt to distinguish *Applied Energetics* is unavailing (Order at 16.)  There, the forum-selection clause read that "any dispute arising out of or relating to this letter . . . shall be resolved through binding arbitration," and a later agreement, which "embod[ied] much of the substance" of the prior agreement, stated that any dispute arising under the subsequent agreement "shall be adjudicated in the Supreme Court, New York County or in the federal district court for the Southern District of New York."  *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522, 523 (2d Cir. 2011).  The Second Circuit found that the forum-selection language "stands in direct conflict" with the mandatory arbitration language in the separate agreement, so the District Court "erred in applying the presumption in favor of arbitration."  *Id.* at 525-526.  By contrast, in *Offshore Exploration*, the Second Circuit found that forum-selection language in which each party merely "consent[ed] to the jurisdiction of the courts located in the State of New York" was merely "permissive" and was therefore complimentary to the agreement to arbitrate in a

separate agreement.  *See* 626 Fed. App'x at 306-07.  Here, the language in the Note's forum-selection provision, stating that "each of the parties hereto irrevocably and unconditionally submits to the exclusive jurisdiction of [New York] courts" and NorthStar "irrevocably and unconditionally waives . . . any objection that it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Note in [the state and federal courts of New York], (*see* Simson Decl., Ex. 3 at ECF 19-3 p. 8), is far more akin to the mandatory language of the forum-selection provision in *Applied Energetics*, and less like the permissive language in *Offshore Exploration.*  (*See generally* Order at 15-16.)

Finally, if NorthStar is correct that all disputes arising under the Note were required to be brought in the ICC Arbitration pursuant to the Framework Agreement, then the forum selection clause in the Note would be entirely superfluous.  *See Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002) ("We disfavor contract interpretations that render provisions of a contract superfluous."); *Walker v. Thompson*, 404 F.Supp.3d 819, 825 (S.D.N.Y. 2019) (similar).  It is impossible to reconcile the parties' agreement in the Note to submit to the "exclusive jurisdiction" of New York courts for any action or proceeding arising out of or relating to the Note, and NorthStar's explicit waiver of any objections to venue in New York (Simson Decl., Ex. 3 at ECF 19-3 p. 8), with the Magistrate's finding that the parties should be compelled to arbitrate NorthStar's breach of its obligations under the Note in Canada.  There were concrete benefits to Spire to negotiating for the requirement that disputes under the Note be subject to New York law and brought in New York, including being able to avail itself of New York's summary judgment in lieu of complaint procedure and avoiding the fees and costs associated with arbitration.  If the Order stands, these benefits will be rendered completely illusory.  The Order

fails to address its departure from these well-established principles of contract interpretation. (*See* Order at 15-16.)

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff Spire Global Subsidiary, Inc. hereby requests that the Court sustain this Objection, and that Defendant NorthStar Earth & Space, Inc.'s Motion to Compel International Arbitration and to Stay This Case be denied.


Dated:  March 10, 2025                    Respectfully submitted,

                                         **FAEGRE DRINKER BIDDLE & REATH LLP**

                                         By:  */s/ Brian P. Morgan*
                                                 Brian P. Morgan
                                                 W. Joshua Lattimore

                                         1177 Avenue of the Americas, 41st Floor
                                         New York, New York 10036
                                         Tel.: (212) 248-3140
                                         Brian.Morgan@faegredrinker.com
                                         Joshua.Lattimore@faegredrinker.com

                                         *Attorneys for Plaintiff Spire Global Subsidiary, Inc.*