# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SPIRE GLOBAL SUBSIDIARY, INC.,

          Plaintiff,

    v.

NORTHSTAR EARTH & SPACE, INC.,

          Defendant.

Case No. 1:24-cv-08434-JHR-SLC

Hon. Jennifer H. Rearden

Magistrate Judge Sarah L. Cave

## DEFENDANT NORTHSTAR EARTH & SPACE INC.'S RESPONSE TO PLAINTIFF SPIRE GLOBAL SUBSIDIARY, INC.'S OBJECTION TO MAGISTRATE JUDGE CAVE'S OPINION AND ORDER

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ........................................................................................................................ 3

    A.    The Parties ...................................................................................................... 3

    B.    The Framework Agreement Governs the Parties' International Business
        Relationship and Contains a Broad, Mandatory Arbitration Provision ................. 3

    C.    Spire Agrees to Provide Vendor Financing to NorthStar for Spire's Own
        Services under the Framework Agreement .............................................................. 4

    D.    Spire Breaches Its Obligations to Provide Services to NorthStar under the
        Framework Agreement ........................................................................................... 6

    E.    The Ontario Superior Court of Justice Grants NorthStar's Application for an
        Interim Injunction Against Spire Pending Arbitration Before the ICC ................. 7

    F.    NorthStar Initiates the First-Filed, Ongoing ICC Arbitration Against Spire .......... 7

    G.    Spire Sues NorthStar in New York State Court More Than One Month After
        the ICC Arbitration Was Filed in Ontario, Canada................................................. 8

    H.    NorthStar Moves to Compel International Arbitration and to Stay This Case ....... 8

    I.    Magistrate Judge Cave Issues Her Order Granting NorthStar's Motion ................ 9

LEGAL STANDARD .............................................................................................................. 11

ARGUMENT ........................................................................................................................... 12

I.    JUDGE CAVE CORRECTLY RULED THAT THE ARBITRATION
    PROVISION IN THE FRAMEWORK AGREEMENT ENCOMPASSES SPIRE'S
    CLAIM FOR PAYMENT UNDER THE NOTE ........................................................... 12

II.    JUDGE CAVE CORRECTLY DETERMINED THAT THE FRAMEWORK
    AGREEMENT AND THE NOTE MUST BE READ TOGETHER............................... 14

III.    JUDGE CAVE CORRECTLY RULED THAT THE NOTE'S GOVERNING
    LAW PROVISION DOES NOT SUPPLANT THE FRAMEWORK
    AGREEMENT'S ARBITRATION PROVISION ......................................................... 17

CONCLUSION........................................................................................................................ 19

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Al Thani v. Hanke,*
2021 WL 4311391 (S.D.N.Y. Sept. 21, 2021)...........................................................13

*Allianz Risk Transfer (Bermuda) Ltd. v. High Lonesome Wind Power, LLC,*
2024 WL 1177720 (S.D.N.Y. Mar. 19, 2024) .............................................................13

*Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC,*
645 F.3d 522 (2d Cir. 2011).......................................................................................18

*Bank Julius Baer & Co. v. Waxfield Ltd.,*
424 F.3d 278 (2d Cir. 2005), *abrogated on other grounds by*
*Granite Rock Co. v. Int'l Brotherhood of Teamsters,* 561 U.S. 287 (2010) ...........19

*Calderon v. Breadberry, Inc.,*
2023 WL 1861639 (E.D.N.Y. Feb. 9, 2023)...............................................................16

*Chen-Oster v. Goldman, Sachs & Co.,*
2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021).............................................................16

*Cornell Univ. v. UAW Loc. 2300,*
942 F.2d 138 (2d Cir. 1991).......................................................................................16

*Holick v. Cellular Sales of N.Y., LLC,*
802 F.3d 391 (2d Cir. 2015)............................................................................15, 16, 18

*Israel v. Chabra,*
2005 WL 589400 (S.D.N.Y. Mar. 11, 2005) ..............................................................19

*Jablonski v. Special Counsel, Inc.,*
2023 WL 2644212 (S.D.N.Y. Mar. 27, 2023) .......................................................11, 12

*Kumaran v. Vision Fin. Mkts., LLC,*
2022 WL 17540669 (S.D.N.Y. Dec. 6, 2022) ......................................................11, 12, 14

*Lai Chan v. Chinese-American Planning Council Home Attendant Program, Inc.,*
180 F. Supp. 3d 236 (S.D.N.Y. 2016).........................................................................16

*Lewis v. N.J. Sports Prods., Inc.,*
2003 WL 1090279 (S.D.N.Y. Mar. 12, 2003) ............................................................16

*Loan on Fine Art LLC v. Peck,*
2024 WL 4601955 (S.D.N.Y. Oct. 29, 2024) .............................................................14

*Offshore Expl. & Prod. LLC v. Morgan Stanley Priv. Bank, N.A.*,
   626 F. App'x 303 (2d Cir. 2015) ...................................................................10, 17

*Offshore Expl. & Prod. LLC v. Morgan Stanley Priv. Bank, N.A.*,
   986 F. Supp. 2d 308 (S.D.N.Y. 2013), *aff'd*,
   626 F. App'x 303 (2d Cir. 2015) ...........................................................................18

*Patel v. Clane Gessel Studio*,
   2024 WL 2732308 (S.D.N.Y. May 24, 2024) ........................................................14

*PB Life & Annuity Co. v. Universal Life Ins. Co.*,
   2020 WL 2476170 (S.D.N.Y. May 12, 2020) ........................................................18

*Plazza v. Airbnb, Inc.*,
   289 F. Supp. 3d 537 (S.D.N.Y. 2018).....................................................................16

*Rosen v. Mega Bloks, Inc.*,
   2007 WL 1958968 (S.D.N.Y. July 6, 2007) ..........................................................16

*Shafer v. Stanley*,
   2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023) ........................................................18

*Shehadeh v. Horizon Pharma USA, Inc.*,
   2021 WL 4176254 (S.D.N.Y. Sept. 14, 2021).........................................................18

*Snyder v. Wells Fargo Bank, N.A.*,
   2011 WL 6382707 (S.D.N.Y. Dec. 19, 2011) ........................................................16

*Thomas v. JPMorgan Chase Bank N.A.*,
   2024 WL 3373373 (S.D.N.Y. July 11, 2024) .........................................................11

*Vassell v. SeatGeek, Inc.*,
   2025 WL 240912 (E.D.N.Y. Jan. 17, 2025) ...........................................................16

STATUTES

The Federal Arbitration Act.................................................................................................1, 9

OTHER AUTHORITIES

CPLR 3213.................................................................................................................8, 17, 18

Fed. R. Civ. P. 72(a) ..............................................................................................2, 11, 16

The Convention on the Recognition and Enforecement of Foreign Arbitral Awards .................1, 9

Defendant NorthStar Earth & Space Inc. ("NorthStar") submits this response to Plaintiff Spire Global Subsidiary, Inc.'s ("Spire['s]") objection (ECF No. 40) ("Objection") to Magistrate Judge Cave's opinion and order (ECF No. 38) ("Order") granting NorthStar's motion to compel international arbitration and to stay this case pending arbitration (ECF No. 18) ("Motion").[1]

## PRELIMINARY STATEMENT

After extensive briefing and oral argument, Judge Cave issued her thorough and well-reasoned, 17-page Order, compelling Spire to arbitrate its claims in this case pursuant to a broad, mandatory arbitration clause in the parties' March 1, 2022 Constellation Services Framework Agreement, as amended ("Framework Agreement") covering "[a]ny dispute or claim" in connection with the Framework Agreement "or its subject matter." Order at 1-3, 13, 17. Unhappy with that outcome, Spire now asks this Court to overturn Judge Cave's thoughtful Order. Spire tellingly does not (and cannot) dispute that Judge Cave correctly found that: (1) the Framework Agreement's arbitration clause is valid, broad, and enforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), as implemented by the Federal Arbitration Act ("FAA"), creating a presumption of arbitrability; (2) the Framework Agreement is the foundational document governing the parties' relationship and served as the genesis for an October 20, 2023 Promissory Note ("Note") whereby Spire provided vendor financing for its own space services to NorthStar under the Framework Agreement; and (3) the parties are currently engaged in a first-filed arbitration in Ontario, Canada before the International Court of Arbitration of the International Chamber of Commerce ("ICC") arising from, among other things, Spire's alleged failure to provide the services for which NorthStar bargained and prepaid

[1] Citations to documents filed on ECF reflect the ECF number and, where a pincite is needed, the ECF page number. "Obj. at _" citations refer to pages in Spire's Objection. ECF No. 40. "Order at _" citations refer to pages in Magistrate Judge Cave's Order. ECF No. 38. All emphasis is added unless otherwise noted.

more than $10 million under the Framework Agreement ("ICC Arbitration"). Order at 8-13.

Instead, in yet another attempt to bypass the Framework Agreement's broad, unambiguous arbitration provision, Spire incorrectly states that Judge Cave erred by relying on "an arbitration provision in an earlier-executed agreement," Obj. at 1, suggesting that the Framework Agreement's arbitration provision was somehow entirely supplanted by the Note. Spire is wrong, and its Objection reargues the very same issues that Judge Cave expressly considered and rejected in her Order compelling Spire to arbitrate its disputed claim for payment under the Note. The Objection, like Spire's opposition to the Motion, repeatedly proclaims that Spire allegedly "bargained for" all claims concerning the Note to be adjudicated by New York courts under a separate "dispute resolution mechanism" that superseded, and should be read in isolation from, the Framework Agreement's arbitration clause. Obj. at 1, 14-20. But, as Judge Cave correctly concluded after carefully analyzing the text of the relevant contractual provisions and the parties' competing arguments, Spire's position is contrary to a "plain reading" of the actual words in both the Framework Agreement and the Note. Order at 10, 13-17. Relatedly, as Judge Cave found, Spire's suggestion that its relationship with NorthStar is somehow "different" or separate because the parties entered into the Note "does not hold water" given that the Framework Agreement and Note operate simultaneously and are inextricably intertwined. *Id.* at 13-14.

Spire's Objection should be denied as Federal Rule of Civil Procedure 72(a) objections are not a mechanism to take a second bite at the apple and relitigate arguments that were considered and rejected. In any event, this fatal defect aside, Spire has not and cannot meet its heavy burden to establish that Judge Cave's Order—which must be given deference—is clearly erroneous or contrary to law. This Court should reject Spire's Objection and affirm the Order.

# BACKGROUND

## A.    The Parties

Spire is a Delaware corporation based in Virginia that provides space services.  ECF No. 19-1 at 3.  NorthStar is a Canadian corporation based in Quebec that owns a patented technology that can detect objects in space that cannot be detected from Earth.  *Id.* at 3, 41-43.  To leverage that technology into a service for its customers, NorthStar requires images and data from space satellites with specific features.  *Id.*  Spire proposed to manufacture, launch, and operate such satellites through an "end-to-end" suite of space services tailored to NorthStar's mission.  *Id.*

## B.    The Framework Agreement Governs the Parties' International Business Relationship and Contains a Broad, Mandatory Arbitration Provision

Spire and NorthStar entered into the Framework Agreement on March 1, 2022.  *Id.* at 2. Spanning 80-plus pages, the Framework Agreement is the foundational document that governs the parties' international business relationship and details each party's obligations thereunder.

In short, NorthStar agreed to make significant upfront payments to Spire, including monthly payments of $518,000, to facilitate Spire's obligation to manufacture, launch, and operate four satellites.  *Id.* at 64.  In exchange, Spire agreed to provide the infrastructure, including the four satellites, and services necessary to deliver images and data from the satellites to NorthStar that meet the service level standards specified in the Framework Agreement.  *Id.* at 69-77. Moreover, if the satellites did not meet such standards, Spire agreed to "use all commercially reasonable efforts" to manufacture, launch, and render operational four new satellites at its own expense within 11 months of the prior launch and to operate the original satellites "at least until such time as" the new satellites are operational.  *Id.* §§ 12.1, 12.2.

Section 25 of the Framework Agreement, titled "Payments," expressly contemplates that, during the course of the parties' business relationship, disputes may arise about amounts owed to

Spire and permits NorthStar to "withhold payment" of such disputed amounts. *Id.* § 25.3. Moreover, Section 49 of the Framework Agreement, titled "Arbitration," contains a broad, mandatory arbitration clause for resolving "[a]ny dispute," providing, in relevant part, that:

> 49.1 ***Any dispute or claim arising out of or in connection with this Agreement or its subject matter*** or formation (including non-contractual disputes or claims) ***shall be finally settled*** under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said Rules. . . .

*Id.* § 49.1 ("Arbitration Provision"). The Framework Agreement provides that this Arbitration Provision "shall remain in full force and effect" even after the agreement ends. *Id.* § 30.2.

The Framework Agreement also contains a merger clause providing that the agreement "constitutes the entire agreement between the Parties regarding the subject matter hereof" and that no party has relied "on any statement, representation, assurance, or warranty . . . that is not set out in this Agreement." *Id.* § 44. The Framework Agreement further provides that "[n]o amendment to or rescission, termination, cancellation, or discharge of this Agreement is effective unless it is in writing and signed by" both parties. *Id.* § 45.

The parties amended the first service order in Schedule 1 to the Framework Agreement on May 11, 2023 and June 9, 2023 and the Framework Agreement itself on October 10, 2023. *Id.* at 83-97. All three amendments provide that, except as modified in the amendment, "all other terms and conditions" of the first service order or the Framework Agreement, as applicable, "shall remain in full force and effect." *Id.* at 84, 88, 93. None of the amendments modified the Arbitration Provision in the Framework Agreement. *See id.* at 83-97.

## C. Spire Agrees to Provide Vendor Financing to NorthStar for Spire's Own Services under the Framework Agreement

In connection with the October 10, 2023 amendment to the Framework Agreement, Spire agreed to provide $4.5 million in vendor financing to NorthStar for services to be rendered by

Spire to NorthStar under the Framework Agreement—*i.e.*, to launch the initial four satellites. *See* ECF Nos. 19-2, 19-3. While procuring the launch provider is Spire's obligation under the Framework Agreement, Spire could not identify a provider after its preferred provider went bankrupt, and refused to pay the additional costs to secure the only suitable alternative NorthStar identified (Rocket Lab). Order at 3-4. Given its significant financial investment in the Spire relationship and business need for the satellites under the Framework Agreement, NorthStar agreed to cover these additional costs, representing a large part of the vendor financing amount in the Note signed on October 20, 2023. *Id.*; ECF No. 19-3.

The Note's connection to the Framework Agreement—defined as the "Spire Agreement" in the Note, ECF No. 19-3 § 7(d)—is made clear in the preamble, stating that NorthStar, as Borrower, promises to pay Spire, as Holder, $4.5 million, together with interest, "except as set forth below," and that:

> ***Interest on this Note shall accrue*** daily from the payable date of the invoice to which a principal amount funded under this Note relates ***pursuant to the terms of the Spire Agreement*** (as defined below). ***This Note*** has been issued ***for business purposes*** and ***evidences a deposit for services to be rendered by the Holder under the Spire Agreement*** (as defined below).

*Id.* at 2. Several other sections of the Note confirm that it is inextricably tied to the Framework Agreement, with the latter remaining the primary, umbrella contract governing the parties' relationship. *See id.* § 7(d), 10(a), § 17.

Section 15 of the Note is a "Governing Law" provision, the first sentence of which provides that the Note will be interpreted under New York law. *Id.* § 15. The provision's second sentence is a submission-to-jurisdiction clause that, by its plain terms, applies ***only*** to actions, litigations, or proceedings ***commenced by NorthStar***. *Id.* The provision's final sentence contains a limited waiver of "venue" and "inconvenient forum" objections. *Id.* The provision is below in full:

15. **Governing Law.** It is intended that this Note will be construed and enforced in accordance with the substantive laws of the State of New York without reference to principles of conflicts of law. The *Borrower* irrevocably and unconditionally *agrees that it will not commence any action, litigation or proceeding* of any kind or description, whether in law or equity, whether in contract or in tort or otherwise, *against the Holder, in any forum other than the courts of the State of New York sitting in New York County*, and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, *and each of the parties* hereto irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and *agrees that all claims in respect of any such action, litigation or proceeding may be heard and determined in such New York State court or*, to the fullest extent permitted by applicable law, *in such federal court*. Each of the parties hereto agrees that a final judgment in any such action, litigation or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. *The Borrower* irrevocably and unconditionally *waives*, to the fullest extent permitted by applicable law, any *objection* that it may now or hereafter have *to the laying of venue of any action or proceeding* arising out of or relating to this Note *in any court* referred to in this paragraph *and* irrevocably *waives*, to the fullest extent permitted by applicable law, *the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court*.

*Id.* ("Note § 15" or "Governing Law Provision"). Nothing in Note § 15 purports to negate the Arbitration Provision in the Framework Agreement, nor reflects a waiver of NorthStar's right to compel arbitration of any action that Spire commences in New York courts. *See id.*

Importantly, Section 17 of the Note reaffirms the Framework Agreement's terms and provides that any payment obligation of NorthStar is "secur[ed]" by Spire's rights under the Framework Agreement. *Id.* § 17. Moreover, unlike the Framework Agreement, the Note does not contain a merger clause, further confirming that the parties intended for the Note to be read in conjunction with the Framework Agreement.

D. **Spire Breaches Its Obligations to Provide Services to NorthStar under the Framework Agreement**

Despite NorthStar's out-of-pocket and promised payments to Spire of more than $14.75 million under the Framework Agreement, Spire materially breached its obligations thereunder before the Note's stated October 20, 2024 maturity date. While Spire, through a third-party

provider, Rocket Lab, launched four satellites into orbit on January 31, 2024, one satellite was lost, and the other three satellites suffer from a myriad of incurable defects. ECF No. 19-5 ¶¶ 4.33-4.38. NorthStar thus gave Spire notice in June 2024 that it was obligated to replace the four satellites per the Framework Agreement's terms. *Id.* ¶ 4.49. Since then, Spire has, among other things, breached the Framework Agreement by failing (1) to "use all commercially reasonable efforts" to manufacture, launch, and render operational the replacement satellites within 11 months of the original launch and (2) to continue to properly operate the original satellites until the replacements are operational. *Id.* ¶¶ 5.1-5.5.

### E. The Ontario Superior Court of Justice Grants NorthStar's Application for an Interim Injunction Against Spire Pending Arbitration Before the ICC

As Spire's failure to continue to operate the satellites posed irreparable harm, NorthStar filed an application before the Ontario Superior Court of Justice for an interim injunction directing Spire to continue to operate, and deliver data from, the satellites during the pendency of the then-contemplated arbitration. ECF No. 19-4 ¶¶ 4-13. Justice Kimmel granted NorthStar's application on September 12, 2024, finding that "there is a reasonable possibility that NorthStar will succeed" on the merits of its breach of contract claims against Spire. *Id.* ¶¶ 46-47. Justice Kimmel also ordered NorthStar to promptly initiate the arbitration. *Id.* ¶ 88.

### F. NorthStar Initiates the First-Filed, Ongoing ICC Arbitration Against Spire

On September 20, 2024, NorthStar initiated the ICC Arbitration in Ontario, Canada, seeking more than $14.75 million in damages, an order that any payment obligation under the Note may be set-off against any damages award, and other relief. ECF No. 19-5 ¶ 5.6.[2] On October 30,

---

[2] That same day, NorthStar asked Spire to voluntarily agree to toll the Note's stated maturity date until the ICC Arbitration is resolved. ECF No. 19-6. Spire declined, ECF No. 19-7, and then sent NorthStar an email invoice with the purported amount due under the Note on October 17, 2024, ECF No. 19-8. The next day, consistent with Section 25.3 of the Framework Agreement, NorthStar sent Spire notice disputing the invoiced amount. ECF No. 19-9.

2024, Spire filed its answer and counterclaim in the ICC Arbitration. ECF No. 19-10. The three-arbitrator panel was constituted as of January 30, 2025. ECF No. 35-1. The first conference before that panel was held on February 21, 2025, and the arbitration is proceeding pursuant to a schedule so entered thereafter. *See* ECF No. 36 at 4-5.

### G. Spire Sues NorthStar in New York State Court More Than One Month After the ICC Arbitration Was Filed in Ontario, Canada

On October 22, 2024, more than one month after the ICC Arbitration was filed, Spire sued NorthStar in New York state court by filing a motion for summary judgment in lieu of complaint ("Summary Judgment Motion") under CPLR 3213, seeking immediate payment of the $4.5 million Note and at least $630,000 in accrued interest. ECF No. 1-1 at 23. Although the Summary Judgment Motion repeatedly referenced the Framework Agreement, it made no mention of the Arbitration Provision or the ICC Arbitration. *See* ECF No. 1-1. NorthStar properly removed the case to this Court on November 5, 2024. ECF No. 1.

### H. NorthStar Moves to Compel International Arbitration and to Stay This Case

Following removal, on December 17, 2024, NorthStar filed its Motion to compel arbitration of Spire's claims in the Summary Judgment Motion and to stay this case pending the arbitration's conclusion. ECF Nos. 18-20. On January 7, 2025, before Spire filed its opposition to the Motion, this Court granted NorthStar's application to stay further briefing on Spire's Summary Judgment Motion until after NorthStar's Motion is decided, explaining that arbitration "should ordinarily be addressed first as a matter of judicial efficiency." ECF No. 25 at 6. That same day, this Court referred NorthStar's Motion to Magistrate Judge Cave. ECF No. 26.

Spire filed its opposition to the Motion on January 16, 2025, ECF No. 27, and NorthStar filed its reply on February 6, 2025, ECF No. 34. At Spire's request, ECF Nos. 28-29, Judge Cave held an hour-long oral argument on the Motion.

## I.    Magistrate Judge Cave Issues Her Order Granting NorthStar's Motion

On February 24, 2025, after extensive briefing and oral argument, Judge Cave ordered that Spire must arbitrate its claim for payment under the Note, staying this case pending the arbitration's conclusion.  ECF No. 38.  In granting the Motion, Judge Cave first determined that the parties' arbitration agreement, as set forth in Section 49 of the Framework Agreement, is valid and enforceable under the Convention, as implemented by the FAA, noting, after analyzing the relevant factors, that Spire concedes that "the Arbitration Provision in the Framework Agreement is valid and enforceable."  Order at 10-12; *see also id.* at 8 n.3, 13 (noting that "Spire does not challenge the validity of the Arbitration Provision" and did "not discuss the New York Convention in its opposition to the Motion").

Judge Cave also found that the Court, and not the arbitral panel, must decide the question of whether Spire's claim for payment under the Note is arbitrable pursuant to the Framework Agreement's Arbitration Provision despite the Note's Governing Law Provision.  *Id.* at 10-11.  After detailing the parties' competing arguments on this question, which the Order aptly described as a "simple matter of contract interpretation," Judge Cave held that "[a] ***plain reading*** of the Arbitration Provision and the Note command arbitration of Spire's claims."  *Id.* at 10-13.

In so holding, Judge Cave, after quoting the Arbitration Provision, found that it "is certainly a broad arbitration provision" and thus "disputes arising from or 'involving matters going beyond the interpretation or enforcement of particular provisions of the' Framework Agreement are given the 'presumption of arbitrability.'"  *Id.* at 13.  Spire did not dispute that the Arbitration Provision is broad in opposing NorthStar's Motion, *see* ECF No. 27, nor does Spire's Objection challenge Judge Cave's determination on this subject, *see* ECF No. 40.  Spire has thus long conceded the Arbitration Provision's breadth.

Judge Cave further found that "the Note must be read in conjunction with the Framework Agreement," explaining that "NorthStar is correct that context matters in reaching a conclusion on this issue of arbitrability" and that "the Note itself incorporates the parties' relationship under the Framework Agreement." Order at 10, 14. Judge Cave thus rejected Spire's position that "the Court must ignore the Framework Agreement and the events that led to the Note and look only to the discrete issue of whether NorthStar breached" the Note. *Id.* at 10. Judge Cave also rejected Spire's related argument that the Note and the Framework Agreement constitute entirely separate business relationships, explaining that "the Note did not transform the legal status of the parties' business relationship and it operates simultaneously, or concurrently, with the Framework Agreement." *Id.* at 14.

Judge Cave then turned to analyzing whether the Note's Governing Law Provision supplants or "contracts around" the Framework Agreement's Arbitration Provision. *Id.* at 15-16. In concluding that it does not, Judge Cave applied well-settled Second Circuit law and correctly held that the Governing Law Provision "is not an 'all-inclusive and mandatory' provision, so it 'should be read as complementary to the agreement to arbitrate.'" *Id.* at 15 (citing *Offshore Expl. & Prod. LLC v. Morgan Stanley Priv. Bank, N.A.*, 626 F. App'x 303, 306-07 (2d Cir. 2015)). As Judge Cave explained, the Governing Law Provision's plain language "makes no mention of arbitration, **compels only NorthStar** to suing based on the Note in the New York courts, and ***does not restrict*** the forum or tribunal in which ***Spire*** may seek relief for disputes arising from the Note." Order at 15. "In other words," Judge Cave continued, "the Governing Law Provision is not all-inclusive because it applies only to actions <u>NorthStar</u> initiates against Spire under the Note and it lacks a merger clause, so it must be read as complementary to, not in place of, the Arbitration Provision." *Id.* (citing *Offshore*, 626 F. App'x at 307) (emphasis in original).

Judge Cave concluded her Order by compelling Spire to arbitrate its claim for payment under the Note pursuant to the Arbitration Provision and staying this case during the pendency of the arbitration. Order at 17. Unhappy with that outcome, Spire filed its Objection. ECF No. 40.

## LEGAL STANDARD

As Spire concedes, *see* Obj. at 13, a magistrate judge's order compelling arbitration is non-dispositive and thus reviewed under Federal Rule of Civil Procedure 72(a). *See Kumaran v. Vision Fin. Mkts., LLC*, 2022 WL 17540669, at *2 (S.D.N.Y. Dec. 6, 2022) (overruling objections to order compelling arbitration). Under Rule 72(a), an order from a magistrate judge (like Judge Cave) must be upheld unless the district court judge determines that it "is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). An order is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Thomas v. JPMorgan Chase Bank N.A.*, 2024 WL 3373373, at *3 (S.D.N.Y. July 11, 2024) (Rearden, J.) (overruling objections to order of Judge Cave). An order is contrary to law only when "it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Id.*

Importantly, Rule 72(a)'s standard of review is "highly deferential" as magistrate judges must be "afforded substantial deference" in resolving non-dispositive matters referred to them. *Id.* "The magistrate judge's findings should not be rejected merely because the court would have decided the matter differently." *Kumaran*, 2022 WL 17540669, at *6. "The party seeking to overturn a magistrate judge's decision thus carries a heavy burden." *Id.* at *2.

Moreover, "Rule 72(a) objections are not a mechanism to obtain a second bite of the apple." *Id.* at *6. Objections that repeat arguments that the magistrate judge considered in reaching its decision are therefore improper. *See, e.g., Jablonski v. Special Counsel, Inc.*, 2023 WL 2644212, at *2 (S.D.N.Y. Mar. 27, 2023) (rejecting "attempt[] to relitigate arguments that were already

thoughtfully considered" by magistrate judge); *Kumaran*, 2022 WL 17540669, at *6 (overruling objections that "repeat the same arguments" made to magistrate judge).

## ARGUMENT

By its Objection, Spire does not come close to meeting its heavy burden of showing that Magistrate Judge Cave's Order is clearly erroneous or contrary to law. Instead, unable to meet that burden, Spire primarily rehashes arguments that Judge Cave carefully considered and rejected in her Order granting NorthStar's Motion and even resorts to mischaracterizing the Order itself. This Court should reject Spire's Objection and affirm the Order.

**I.      JUDGE CAVE CORRECTLY RULED THAT THE ARBITRATION PROVISION IN THE FRAMEWORK AGREEMENT ENCOMPASSES SPIRE'S CLAIM FOR PAYMENT UNDER THE NOTE**

Spire's Objection falls flat out of the gate by contending that Magistrate Judge Cave's Order should be overturned because, according to Spire, "a review of the relevant contractual agreements demonstrates that" Spire's claim for payment under the Note is "not subject to arbitration under the Framework Agreement['s]" Arbitration Provision. Obj. at 14. But Spire started the argument section of its opposition to the Motion by advancing that exact same argument. *See* ECF No. 27 at 16. And Judge Cave, after careful consideration, rejected Spire's argument as contrary to "[a] ***plain reading*** of the Arbitration Provision and the Note." Order at 10-13. As Judge Cave explained, "[t]he dispositive question here is a simple matter of contract interpretation, ***albeit not the one Spire presses***: before reaching the merits of Spire's claims under the Note, does the Arbitration Provision compel their arbitration? ***It does***." *Id.* at 10. This Court should reject Spire's attempt to relitigate the same substantive argument that Judge Cave analyzed and decided in her Order. *See, e.g.*, *Jablonski*, 2023 WL 2644212, at *2; *Kumaran*, 2022 WL 17540669, at *6.

In any event, after analyzing the parties' competing arguments and the text of the relevant contractual provisions, Judge Cave correctly held that "[a] plain reading of the Arbitration Provision and the Note command arbitration of Spire's claims." Order at 13. Judge Cave likewise appropriately declined Spire's invitation to read into the Arbitration Provision's unambiguously broad scope an implicit carveout for claims asserted by Spire under the Note. *See Allianz Risk Transfer (Bermuda) Ltd. v. High Lonesome Wind Power, LLC*, 2024 WL 1177720, at *8 (S.D.N.Y. Mar. 19, 2024) (declining to read into "unambiguous language" an "implicit limitation on the scope of claims that are subject to arbitration"); *Al Thani v. Hanke*, 2021 WL 4311391, at *7 (S.D.N.Y. Sept. 21, 2021) (holding that "unambiguous and broad arbitration provision . . . cannot be reasonably interpreted as having a carve-out"). In other words, it is Spire's interpretation, not Judge Cave's, that ignores the plain text of the Framework Agreement and the Note and improperly transforms it to say something that it simply does not say.

Unable to identify any error, let alone a clear error, in Judge Cave's textual analysis, Spire turns to mischaracterizing the Order, contending that Judge Cave "erred in concluding that Spire agreed to arbitrate all disputes generally 'concerning the parties' business relationship' and therefore the arbitration clause encompasses 'disputes arising under the Note.'" Obj. at 15 (citing Order at 11-12). The Order says nothing of the sort, and Spire's attempt to invent an error illustrates its desperation. The Order states that, although the Court is "aware . . . that Spire ***previously agreed*** to the ICC's rules and to arbitration of disputes concerning the parties' business relationship in the context of the Framework Agreement" for the purpose of the ICC Arbitration, the Court must separately "decide the interpretative dispute between the Arbitration Provision and the Governing Law Provision" in the context of this case. Order at 11. In other words, what Spire falsely describes as an error, *see* Obj. at 15, is in fact reflective of Judge Cave's thoughtful

deliberation over the contractual interpretation question that was before her.

Because Spire has failed to show that Judge Cave's determination that the Framework Agreement's Arbitration Provision encompasses Spire's claim under the Note was clearly erroneous or contrary to law, Spire's Objection should be overruled. *See, e.g.*, *Patel v. Clane Gessel Studio*, 2024 WL 2732308, at *3 (S.D.N.Y. May 24, 2024) (overruling objections to order compelling arbitration where magistrate judge analyzed arbitration clause's "plain language"); *Kumaran*, 2022 WL 17540669, at *6.

## II. JUDGE CAVE CORRECTLY DETERMINED THAT THE FRAMEWORK AGREEMENT AND THE NOTE MUST BE READ TOGETHER

Spire next argues that Judge Cave erred in finding that "the Note must 'be read in conjunction with the Framework Agreement'" because, according to Spire, they are entirely "separate agreements," each containing "its own dispute resolution mechanism" and reflecting a "different" business relationship. Obj. at 16-20. But, again, Spire's claim of error asks this Court to reconsider the same arguments that Spire raised in opposing the Motion, *see* ECF No. 27 at 16-20, and that Judge Cave's Order considered and flatly rejected. *See* Order at 10-14. This Court should reject Spire's attempt to obtain "a second bite of the apple," *Kumaran*, 2022 WL 17540669, at *6, and to "reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Loan on Fine Art LLC v. Peck*, 2024 WL 4601955, at *2 (S.D.N.Y. Oct. 29, 2024) (Rearden, J.).

In any event, Judge Cave's determination that the Framework Agreement and Note must be read together, Order at 10, is correct and supported by the Note's plain language. As Judge Cave thoughtfully explained in rejecting Spire's position that the Note should be read in isolation from the Framework Agreement, "context matters in reaching a conclusion on this issue of arbitrability" and, "[e]ven confined to its four corners, the Note itself incorporates the parties' relationship under the Framework Agreement." *Id.* Judge Cave then pointed to the Note's actual

words, which Spire's Objection continues to either ignore or mischaracterize, quoting from the Note's preamble and finding that:

> Unfortunately for Spire, the Note specifically states that it was "issued for business purposes and evidences a deposit for services to be rendered by [Spire] under the Spire Agreement[,]" i.e., the Framework Agreement.  Furthermore, the Note provides that interest "shall accrue daily from the payable date of the invoice to which a principal amount funded under this Note relates pursuant to the terms of the Spire Agreement[.]"  Even if we were to set aside the $4.5 million principal, Spire successfully negotiated for interest on that sum and agreed to an accrual date based on the Framework Agreement.

Id. at 14 (internal citations omitted).  Judge Cave also found that the Note's "purpose was to pay Rocket Lab the funds necessary to launch the [four original] satellites under the" Framework Agreement.  Id.  Judge Cave's findings are neither erroneous nor contrary to law.

In its Objection, Spire contends that Judge Cave's findings are erroneous because the Note purportedly does not concern the payment of "Fees" under the Framework Agreement.  Obj. at 15-16.  This Court need look no further than Spire's own table of contents in its opposition to the Motion to reject this recycled argument.  See ECF No. 27 at 2 ("**NorthStar Paid Fees in the Form of a Promissory Note.**"); see also ECF No. 1-1 at 21 (Spire's now-CEO attesting that the Note was issued for "certain amounts owed under the Spire Agreement").  Spire's related argument that "[t]he Framework Agreement does not contemplate Spire paying" so-called "launch fees," Obj. at 16, is equally unavailing and belied by the Framework Agreement's plain language.  See, e.g., ECF No. 19-1 at 47 ("Spire will procure and manage all launches as part of the service."); id. at 87 (discussing "Launch Fees" paid to "the Launch Service Provider").

Spire also falsely accuses Judge Cave of cursorily dismissing and giving "short shrift" to Spire's lead case, Holick v. Cellular Sales of N.Y., LLC, 802 F.3d 391 (2d Cir. 2015).  Obj. at 12.  Holick was discussed extensively in the parties' papers, ECF No. 27 at 16-18; ECF No. 34 at 11, at oral argument, ECF No. 36 at 17-18, and in Judge Cave's Order itself, ECF No. 13-14.  And, in

determining that Spire's reliance on *Holick* "does not hold water," Judge Cave carefully distinguished the facts and contracts at issue in *Holick* from those at issue in this case.

As Judge Cave explained, "the Note did not transform the legal status of the parties' business relationship and it operates simultaneously, or concurrently, with the Framework Agreement, unlike the contracts in *Holick*, which ran consecutively and did change the parties' legal relationship." *Id.* (cleaned up). Several other courts have similarly distinguished *Holick*.[3] And Spire's disagreement with Judge Cave's and other courts' application of *Holick* cannot possibly establish any reversible error. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 2021 WL 4199912, at *3 (S.D.N.Y. Sept. 15, 2021) (overruling objections where magistrate judge's order "distinguished the facts in [plaintiffs'] cases from the facts here").

Because Judge Cave's determination that the Note and the Framework Agreement should be read together was neither clearly erroneous nor contrary to law, Spire's Objection should be overruled.[4]

---

[3] *See, e.g.*, *Vassell v. SeatGeek, Inc.*, 2025 WL 240912, at *8 (E.D.N.Y. Jan. 17, 2025) (finding that "*Holick* is inapplicable" because, unlike in *Holick*, "the relationship between the parties remained the same . . . both before and after entering into the [contract]"); *Calderon v. Breadberry, Inc.*, 2023 WL 1861639, at *6 (E.D.N.Y. Feb. 9, 2023) (distinguishing *Holick* on the ground that the parties' relationship "did not materially change between the time of the execution of the two agreements"); *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 551 n.23 (S.D.N.Y. 2018) (distinguishing *Holick* on the ground "the parties' contractual positions and relationship" had not changed "over time in a way that impacted arbitrability"); *Lai Chan v. Chinese-American Planning Council Home Attendant Program, Inc.*, 180 F. Supp. 3d 236, 243-46 (S.D.N.Y. 2016) (denying reconsideration and concluding that "the Court is unpersuaded that consideration of *Holick* alters [its] decision that plaintiffs' claims are arbitrable" as *Holick* is "distinguishable").

[4] In addition to rehashing arguments about *Holick*, Spire's Objection includes a 250-plus word discussion of *Rosen v. Mega Bloks, Inc.*, 2007 WL 1958968 (S.D.N.Y. July 6, 2007) that is lifted ***verbatim*** from its opposition to the Motion. *Compare* Obj. at 18-19 *with* ECF No. 27 at 19-20. Again, Spire's approach to Rule 72(a) objections is not proper. And, in any event, *Rosen* is easily distinguishable, as NorthStar explained on reply in support of the Motion. *See* ECF No. 34 at 12 n.7. Spire's reliance on *Cornell Univ. v. UAW Loc. 2300*, 942 F.2d 138 (2d Cir. 1991), *Snyder v. Wells Fargo Bank, N.A.*, 2011 WL 6382707 (S.D.N.Y. Dec. 19, 2011), and *Lewis v. N.J. Sports Prods., Inc.*, 2003 WL 1090279 (S.D.N.Y. Mar. 12, 2003), Obj. at 14-15, 18, 20, falls flat for similar reasons. *See* ECF No. 34 at 11 n.6 (distinguishing cases).

### III. JUDGE CAVE CORRECTLY RULED THAT THE NOTE'S GOVERNING LAW PROVISION DOES NOT SUPPLANT THE FRAMEWORK AGREEMENT'S ARBITRATION PROVISION

Judge Cave also correctly determined that the Note's Governing Law Provision does not supersede or contract around the Framework Agreement's Arbitration Provision. Order at 15-16. The Governing Law Provision, as Judge Cave held after carefully considering the parties' arguments and cited cases, "is not an 'all-inclusive and mandatory' provision, so it 'should be read as complementary to the agreement to arbitrate.'" *Id.* at 15.

In yet another impermissible attempt to relitigate arguments that were made before, and appropriately rejected by, Judge Cave, Spire contends that the Note's Governing Law Provision trumps the Framework Agreement's Arbitration Provision because, according to Spire, the Governing Law Provision "gives New York courts *exclusive jurisdiction* over disputes arising out of the Note." Obj. at 20-22 (emphasis in original). But, as Judge Cave's Order explained in detail, the Governing Law Provision does not say that. Order at 15-16. Instead, the Governing Law Provision, including its sentence referencing "exclusive jurisdiction," "*compels only NorthStar* to suing based on the Note in the New York courts, and *does not restrict* the forum or tribunal in which *Spire* may seek relief for disputes arising from the Note." *Id.* In other words, as Judge Cave continued, "the Governing Law Provision is not all-inclusive because it applies only to actions NorthStar initiates agaisnst Spire under the Note and it lacks a merger clause, so it must be read as complementary to, not in place of, the Arbittration Provision." *Id.* (citing *Offshore*, 626 F. App'x at 307) (emphasis in original).

And, although Spire argues, as it did in opposing the Motion, *see* ECF No. 27 at 27-28, that it specifically bargained for the right to bring a CPLR 3213 action in New York under the Note, Obj. at 22, the Governing Law Provision's plain language, as correctly construed by Judge Cave,

*see* Order at 15-16, is to the contrary. To be sure, nowhere in the Note is there any mention of CPLR 3213 actions or summary judgment motions in lieu of complaint. *See* ECF No. 19-3.

Spire next contends that Judge Cave's Order did not adequately distinguish *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, 645 F.3d 522 (2d Cir. 2011). Obj. at 21-22. But Spire's arguments concerning Judge Cave's treatment of *Applied Energetics* fail for the same reasons as Spire's arguments concerning *Holick*. *See supra* 15-16. *Applied Energetics* was discussed in the parties' papers, ECF No. 20 at 28, at oral argument, ECF No. 36 at 27-29, and in Judge Cave's Order itself, Order at 15-16. And, in determining that Spire's reliance on *Applied Energetics* was misplaced, Judge Cave carefully distinguished the facts and contracts at issue in *Applied Energetics* from those at issue in this case. As Judge Cave explained, unlike here, the later-executed contract in *Applied Energetics* contained a "merger clause" and its forum selection provision was "all-inclusive, mandatory, and [did] not admit the possibility of the" earlier agreement's arbitration clause. Order at 16 (citing *Applied Energetics*, 645 F.3d at 525). At least four other courts in this District have distinguished *Applied Energetics* on similar grounds.[5] Spire's disagreement with Judge Cave and all these other courts is not enough to carry its heavy burden of establishing that Judge Cave's Order was clearly erroneous or contrary to law.

Finally, Spire's argument that Judge Cave's and NorthStar's construction of the Note's Governing Law Provision renders it "entirely superfluous" and "impossible to reconcile" with the

---

[5] *See, e.g.*, *Shafer v. Stanley*, 2023 WL 8100717, at *13-14 (S.D.N.Y. Nov. 21, 2023) (distinguishing *Applied Energetics* on the ground that the second contract did "not contain a merger clause"); *Shehadeh v. Horizon Pharma USA, Inc.*, 2021 WL 4176254, at *4 (S.D.N.Y. Sept. 14, 2021) (distinguishing *Applied Energetics* on the ground that "the text of the [second contract] indicates that it does not supersede the" prior contract); *PB Life & Annuity Co. v. Universal Life Ins. Co.*, 2020 WL 2476170, at *10 (S.D.N.Y. May 12, 2020) (distinguishing *Applied Energetics* on the ground that "the intent of the [second contract] was not to replace or supersede the" prior contract); *Offshore Expl. & Prod. LLC v. Morgan Stanley Priv. Bank, N.A.*, 986 F. Supp. 2d 308, 319 (S.D.N.Y. 2013) (distinguishing *Applied Energetics* on similar grounds), *aff'd*, 626 F. App'x 303 (2d Cir. 2015).

Framework Agreement, *see* Obj. at 22, is simply wrong. Neither Judge Cave nor NorthStar interpret the Governing Law Provision to require that all claims under the Note must be resolved in arbitration, as Spire misleadingly suggests. *Id.* To the contrary, as NorthStar explained at length in its papers and at oral argument, the Governing Law Provision can be read as providing that actions, litigations, or proceedings to confirm or vacate an arbitral award should be filed in New York courts while the Framework Agreement continues to require arbitration of any dispute in connection with its subject matter. *See, e.g.*, *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284-85 (2d Cir. 2005) (compelling arbitration over later forum selection clause that may be read as providing that defendant "will not challenge either jurisdiction or venue" if plaintiff "files a suit in court . . . to enforce an arbitral award"); *Israel v. Chabra*, 2005 WL 589400, at *4 (S.D.N.Y. Mar. 11, 2005) (compelling arbitration over later forum selection clause that could be read as providing that litigation "where appropriate (*e.g.*, to confirm an arbitration award), must occur in the courts of New York"). Other potential claims related solely to the Note may be filed in New York, too. *See* ECF No. 36 at 13-14 (identifying other NorthStar-initiated claims to be filed in New York courts under the Governing Law Provision, including potential claims if Spire were to violate its confidentiality obligations as an observer of NorthStar's board under the Note).

Because Judge Cave's determination that the Note's Governing Law Provision did not supplant the Framework Agreement's Arbitration Provision was neither clearly erroneous nor contrary to law, Spire's Objection should be rejected.

## CONCLUSION

For these reasons, NorthStar respectfully submits that this Court should overrule Spire's Objection to Magistrate Judge Cave's Order and affirm the Order in its entirety.

Dated: March 24, 2025

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ *Sylvia E. Simson*       
    Sylvia E. Simson
    Michael E. Mirdamadi
    Charles J. Berk
    One Vanderbilt Avenue
    New York, New York 10017
    (212) 801-9200
    sylvia.simson@gtlaw.com
    mike.mirdamadi@gtlaw.com
    berkc@gtlaw.com

*Attorneys for Defendant*
*NorthStar Earth & Space Inc.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York, I certify that this document complies with Rule 7.1(c)'s word count limit because it contains 6,542 words, excluding the sections exempted by Rule 7.1(c). In making this certification, I relied on the word count of the word-processing program used to prepare this document.

/s/ *Sylvia E. Simson*
Sylvia E. Simson